THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAVINDRAKUMAR PATEL, Defendant-Appellant.

Second District   No. 2—89—1373

Opinion filed May 9, 1991.

Robert J. Hauser, of Sullivan, Smith, Hauser & Noonan, Ltd., of Waukegan, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Ravindrakumar Patel, appeals from his conviction of aggravated criminal sexual abuse (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(a)(4)). Defendant was originally charged with one count of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14), one count of criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(2)), and one count of aggravated criminal sexual abuse (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(a)(4)), following an alleged

sexual act against C.R., a physically handicapped person, on January 23, 1989.

On August 23, 1989, the trial court, over defense counsel's objection, allowed the State to file a new indictment, which charged defendant with three counts of aggravated criminal sexual assault and one count of criminal sexual assault. Each count alleged that, by the use of force, defendant had placed his penis on the victim's anus. Subsequently, defendant waived his right to a jury trial. Immediately prior to trial, defendant moved the court below to dismiss the indictment, alleging the pertinent statute was not consistent with the legislature's purposes and it was overly broad. The court ordered said motion to be heard at a later date, at which time defendant's motion was denied.

At the bench trial's conclusion, the trial court found defendant not guilty as to the counts charged in the indictment. The court then found defendant guilty of aggravated criminal sexual abuse, which it determined to be a lesser-included offense of aggravated criminal sexual assault. The trial court subsequently denied defendant's post-trial motion and sentenced defendant to a five-year term of imprisonment. This appeal followed.

Defendant raises four issues, namely, (1) the trial court erred in finding him guilty of aggravated criminal sexual abuse; (2) the trial court erred in determining that aggravated criminal sexual abuse is a lesser-included offense of aggravated criminal sexual assault; (3) the trial court erred in denying his motion for a directed verdict; and (4) aggravated criminal sexual assault and aggravated criminal sexual abuse violate his constitutionally guaranteed right to due process.

We first address the issue of whether the evidence supported a conviction of aggravated criminal sexual abuse. Judy Rippberger testified that she is a treatment nurse employed by the Brentwood North Nursing Home. On January 23, 1989, she was assigned to the skilled unit of that nursing home which included room 107, bed 2, in which C.R. was confined. Rippberger first entered room 107 at 9:45 a.m. She observed defendant, who worked as a nurse's aid, fixing a basin of water with which to give C.R. a bath. At this time, C.R. was lying on her back with her upper body exposed. Rippberger was in the room for approximately 30 to 60 seconds before leaving and closing the door. She returned to the room approximately one minute later. C.R. was now completely exposed lying on her left side. Defendant requested that Rippberger wait for him to complete the bed bath before beginning C.R.'s tube feeding. This was not an unusual request.

When, some minutes later, Rippberger entered room 107 for the third time, she observed defendant "laying [*sic*] on top of C.R. and he was moving up and down his buttocks. \*\*\* [C.R.] was still completely nude \*\*\* [defendant] had his clothes, white shirt and white pants, on." She saw him move up and down approximately six times. The bodies of both defendant and C.R. were straight. When defendant finally realized that Rippberger was in the room, he climbed off C.R.

Rippberger "saw his front when he stood up outside of the bed. He was facing me." Defendant was fully clothed at that time. His penis was not exposed. Rippberger never saw his hands go towards his zipper or pull up his pants. Rippberger and defendant then looked at each other for a few seconds without speaking until Rippberger left the room and reported the incident.

Dr. Bruce Harris testified he is a medical doctor, board certified in emergency medicine. On January 23, 1989, Dr. Harris saw C.R. in the Lake Forest Hospital emergency room at approximately 4:49 p.m. He had been contacted by C.R.'s internist as to an alleged sexual assault. Dr. Harris, therefore, conducted an examination of C.R. for injury and also to determine if there was any evidence of sexual assault. He used a sexual assault kit, taking various oral, vaginal and rectal swabs and smears. These swabs and smears were then placed in the kit which was, in turn, marked by Nurse Cathy Orr for purposes of later laboratory examination.

Dr. Harris testified that C.R. had the diagnosis of locked-in syndrome secondary to hypoxic encephalopathy, a condition of brain damage which occurs when the brain does not receive oxygen. Dr. Harris was unable to communicate with C.R. in any way during his examination of her. Dr. Harris further noted that C.R.'s physical condition included severe contraction of her legs and arms. For him to examine fully the vaginal, anal and rectal areas, it was, therefore, necessary that two nurses pry her legs apart. Dr. Harris' physical examination of C.R.'s body revealed no signs of trauma or injury. He saw no signs of redness or irritation either of the vagina or rectum or anus.

Dr. Harris had examined approximately 100 alleged sexual assault victims during his career as an emergency room physician. He testified that sperm or semen can seep through clothing because the latter is porous. Dr. Harris also testified that sperm or semen can seep into the rectum without penetration or contact between the sex organ of the male and the anus of the female. If semen or sperm were found in C.R.'s rectum, Dr. Harris would not have been able to say whether it was caused by any type of direct contact with the penis and anus, as

opposed to it seeping through defendant's clothing without any direct or indirect contact.

Detective Lawrence Oliver testified that he had served with the Lake County sheriff's office for 11 years. On January 23, 1989, he was assigned to investigate the subject incident. He viewed C.R. as she lay in her bed. Detective Oliver received no response from C.R. when he attempted to communicate with her. Detective Oliver spoke to Judy Rippberger, who told him that she observed defendant "dry humping" C.R. After the investigation at Brentwood Nursing Home was concluded, defendant was transported to the Lake County sheriff's office.

Detective Oliver advised defendant of his *Miranda* rights. Defendant indicated that he wished to make a voluntary statement after being apprised of these rights. In his statement to Oliver, defendant admitted lying on top of C.R., but he stated that "he kept his dick in his pants." He further stated, "I didn't undo my pants."

Defendant maintained that at no time did he mean to penetrate C.R. or have intercourse with her. He merely wanted to satisfy himself. Defendant's written statement was consistent with his verbal statements. Defendant's nurses' whites were not taken for analysis.

Dr. Rohit Shah is a medical doctor, board certified in internal medicine and oncology. He has been the medical director of Brentwood Nursing Home since 1976 and first began to treat C.R. in 1986. Dr. Shah testified that C.R.'s diagnosis was diffuse cerebral dysfunction as a result of a boating accident in 1982. She was completely paralyzed in all her extremities and was unable to communicate or respond to any stimuli or questions. Dr. Shah had never been able to communicate with C.R. in any way. Also, C.R. was unable to move herself; she had to be moved by others for any examination. Dr. Shah saw C.R. approximately once every two months but did not see her on January 23, 1989. Regarding her paralysis, Dr. Shah testified that C.R. suffered from "severe contractures of her legs." He believed, based upon a reasonable degree of medical certainty, that C.R. did not know that defendant was on top of her on January 23, 1989.

William H. Wilson testified that he is a forensic scientist employed at the Northern Illinois Crime Laboratory since April 1988. Wilson testified that the bodily samples obtained at the Lake Forest Hospital emergency room from C.R. on January 23, 1989, were submitted to his laboratory on January 25, 1989, and tested by him on February 16, 1989. From his review of the various swabs, smears and slides, almost all were negative including the rectal smear prepared by Dr. Harris. The one exception was that Wilson testified he pre-

pared a slide from the second rectal swab. On this slide, he observed five sperm heads. He saw no tails. Wilson conceded that bacteria could have deteriorated the rectal slide he had prepared.

Wilson agreed that another scientist, observing the subject swab smear, might not have seen sperm heads. Wilson further agreed that *Forensic Science Handbook* by Saferstein is authoritative. Within that handbook, there is a chapter entitled, "The Identification and Individualization of Semen Stains" by F. Samuel Biecatel, Ph.D., Forensic Science Research and Training Center, Federal Bureau of Investigation. In that chapter, Biecatel wrote, "Semen cannot be identified on the basis of spermatozoa fragments." Wilson disagreed with Biecatel's statement.

Patricia Barrows, a registered nurse and the geriatric clinician for the Brentwood Nursing Home, testified on behalf of defendant. As geriatric clinician, she is asked to examine patients physically when there is a change and/or indication of change in a patient's condition. At approximately 10:05 a.m. on January 23, 1989, she examined C.R. in the latter's room. With the assistance of a female nurse's aid, she visually examined C.R., who did not appear to be upset. Barrows found no trauma or redness or irritation to C.R.'s genital area, buttocks, anus or rectum. On prior occasions, she had examined C.R.'s rectum. Barrows conducted a rectal examination and found no visual or olfactory evidence of semen or sperm. There was no mucous discharge present. The sphincter muscle was further checked and found to be tight, which indicated no penetration. Barrows also examined the bed linen and found nothing.

Detective Robert Randall testified that on January 23, 1989, Detective Oliver and he questioned the defendant, who admitted "that he was mounted on top of [C.R.] while she was laying [*sic*] on her chest and that he was rubbing his penis through his trousers on her buttocks."

Defendant's wife, Asha Patel, identified three pieces of clothing worn by defendant on January 23, 1989, namely, his white shirt, white long pants and underpants. Mrs. Patel testified that after her husband was released from jail, he was still wearing this outfit. She washed the articles of clothing because they were dirty. Mrs. Patel did not notice any stains on them.

Defendant testified that he had been in the United States since 1985 and worked at the Brentwood Nursing Home for the last 2½ years until January 23, 1989. On January 23, 1989, he worked the 7 a.m. to 3 p.m. shift. He was assigned to rooms 104 through 107, which had eight patients, including C.R., who was the only nonambu-

latory patient. Early in the shift, he helped the other seven patients "get up" for breakfast. At this time, he changed C.R.'s diaper. Following breakfast, defendant took a brief break and then began C.R.'s bed bath. Judy Rippberger twice came into room 107. After Rippberger left the second time, defendant found himself aroused by C.R.'s nakedness. He got on top of C.R. and started to rub against her buttocks.

Defendant was fully clothed, wearing his nurses' whites as he rubbed against C.R. His pants always remained on and up to his waist. He never unclasped and/or unbuttoned his outer pants, nor did he ever unzip the pants' zipper. He never exposed his penis. Defendant estimated that he was on top of C.R. about five minutes. He did not immediately see Judy Rippberger when she entered the room a third time. When he finally saw her, "he got down and looked at her." Defendant then moved a few steps towards Rippberger, until he was approximately seven to eight feet from her. As they both stood and looked at each other, neither said anything. Defendant had ejaculated while rubbing against C.R. His pants and underwear were wet in the crotch area. After Rippberger left the room, he cleaned up C.R., including "her back side."

Dr. John Medved testified that he is a medical doctor, board certified in family medicine. He had extensive experience in examination of female genital and anal areas. Dr. Medved stated that, after an incident in which the anus was subject to rubbing, he would expect redness to be observed in an examination held within 20 minutes of the episode. Dr. Medved further expected that in an examination even seven to eight hours later, an experienced physician could still determine signs of redness, irritation or trauma to the anus if there had been direct rubbing. Dr. Medved further stated that the small number of spermatozoa seen in the slide prepared by William Wilson would indicate that it was more likely that the presence of same was due to seepage through defendant's clothing, rather than to penetration.

■ In finding the defendant guilty of aggravated criminal sexual abuse, the trial court stated in pertinent part:

> "Specifically, so the record is clear, the sexual conduct involved for the purpose of criminal sexual abuse language was the rubbing of the defendant and his penis against the victim including her buttocks and anus through the clothing for the purpose of defendant's sexual gratification and arousal."

Further, the trial court found that under section 12—16(a)(4) of the Criminal Code of 1961 (Code), defendant was guilty of aggravated criminal sexual abuse. (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(a)(4).)

Aggravated criminal sexual abuse is based upon an act of sexual conduct which is defined thusly:

" 'Sexual conduct' means any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, for the purpose of sexual gratification ***." Ill. Rev. Stat. 1987, ch. 38, par. 12—12(e).

■ In ascertaining whether defendant's conviction can stand, we must, in interpreting the relevant statutory provisions, give the words their ordinary and popularly understood meanings. *Maloney v. Bower* (1986), 113 Ill. 2d 473.

■ Relating the evidence before us to the elements of sexual conduct as defined above, we initially find there is no doubt that defendant's actions were knowing and intentional and for purposes of his sexual gratification. He admitted as much. Further, his actions clearly constituted a touching of C.R. by his sex organs through his clothing. The evidence is clear that C.R. lay naked on her stomach and that the defendant, clothed in his white uniform, lay on her back on his stomach. He admitted "dry humping" her for approximately five minutes, during which time he had an ejaculation. A nurse, Patricia Barrows, examined C.R. approximately 20 minutes after the incident. She found no evidence of trauma, irritation or redness at or around C.R.'s anus, and, further, she found no evidence of semen or sperm.

Dr. Bruce Harris examined C.R. approximately seven hours after the incident; his examination revealed no signs of redness, trauma or irritation to C.R.'s vagina, rectum or anus. He further stated that if sperm were found in C.R.'s rectum, he had been unable to say whether its presence was due to direct contact to C.R. rather than seepage through defendant's clothing. William Wilson, a forensic scientist, testified that body samples were obtained from C.R.'s rectum at the Lake Forest Hospital emergency room and he found five sperm heads on the slide that was prepared from the second rectal swab made from C.R. The evidence was conflicting as to whether semen could be identified on the basis of spermatozoa fragments. Dr. John Medved opined that the presence of so few sperm indicated that these entered C.R.'s rectum after seeping through defendant's clothing. The defendant admitted rubbing his clothed genitals against C.R.'s exposed buttocks but denied he made any contact, direct or otherwise, with C.R.'s anus prior to or after ejaculation.

The State argues that there is no doubt that defendant rubbed his penis through his clothing against the victim's buttocks and that this

involvement of the penis constituted sexual conduct as defined in section 12—12(e) of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 12—12(e)), as hereinbefore set forth and that, therefore, an act of sexual conduct as defined in the statute was performed. On the other hand, the defendant's brief states "to find the defendant guilty of aggravated criminal sexual assault, there must be shown an intentional or knowing touching of [C.R.'s] anus."

■ In *People v. Nibbio* (1989), 180 Ill. App. 3d 513, 518, the defendant, who was 17 years of age, was charged with committing an act of sexual conduct with a victim in that he touched his sex organ to the back of the victim for the purpose of sexual gratification. In that cause, the court made the following interpretation in reference to the argument made by the defendant in this case:

"Section 12—12(e) refers expressly to the 'touching' by either 'the victim or the accused' of the sex organs, anus or breast of either 'the victim or the accused.' Hence, the defendant's argument that to have violated the statute he must have touched the sex organs, anus or breast of a victim who has attained the age of 13 or more *is not well taken.*" (Emphasis added.) 180 Ill. App. 3d at 518.

Also, in *People v. Finley* (1988), 178 Ill. App. 3d 301, 307, the court further observed that "sexual conduct" as defined in section 12—12(e) of the Code did provide that such conduct could be "through clothing." Accordingly, on the basis of the evidence presented, the trial court properly found the defendant guilty of aggravated criminal sexual abuse.

■ Defendant also claims that the trial court erred in determining that aggravated criminal sexual abuse is a lesser-included offense of aggravated criminal sexual assault. In the case of *People v. Finley*, the court observed:

"We believe aggravated criminal sexual abuse may be established by the same or less than all of the facts than that which is required to establish aggravated criminal sexual assault. In *People v. Creamer*, the court examined the criminal sexual abuse statute and the criminal sexual assault statute and determined that the difference between a charge under the latter and a charge under the former 'lies solely in the fact that the assault requires proof of sexual penetration.'" (*Finley*, 178 Ill. App. 3d at 306.)

At another point in the opinion, it is also stated as follows:

"We believe, however, that the *Creamer* court's analysis is correct; proof of the same or less facts than that which is required

to establish criminal sexual assault can establish criminal sexual abuse." (178 Ill. App. 3d at 306.)

Here, the defendant cited *People v. Burmeister* (1986), 147 Ill. App. 3d 218, for the purpose of showing that aggravated criminal sexual abuse is not a lesser-included offense of aggravated criminal sexual assault; however, the *Creamer* court refused to follow that holding; therefore, according to *Creamer* we hold that aggravated criminal sexual abuse is a lesser-included offense of aggravated criminal sexual assault.

■ Defendant also claims that the trial court erred in finding defendant guilty at the close of all the evidence; however, the facts as set forth above support the court's finding of guilty of aggravated criminal sexual abuse.

The State also points out that the defendant presented evidence following the denial of his motion for a directed verdict and did not renew his motion at the close of this cause. The defendant, at the close of the case, argued that the evidence was insufficient to prove the offense charged, and the trial court agreed but reduced the charge to one it believed to be a lesser-included offense, namely, aggravated criminal sexual abuse.

■ Lastly, the defendant contends that the statutory scheme of sex offenses provided by the provisions referring to criminal sexual assault and criminal sexual abuse lack a "coherent pattern." However, our supreme court in *People v. Terrell* (1989), 132 Ill. 2d 178, 214, addressed this issue. As shown by the facts of this case, the lesser intrusive behavior comprises the lesser offense and does not violate due process. See also *People v. Burmeister* (1986), 147 Ill. App. 3d 218.

On the basis of the foregoing, we affirm the judgment of the circuit court.

Affirmed.

INGLIS and NICKELS, JJ., concur.