THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES E. WITTENMYER, Defendant-Appellant.

Third District  No. 3—90—0693

Opinion filed July 26, 1991.—Modified opinion filed August 26, 1991.— Rehearing denied August 26, 1991.

Paul Bradley, of Chicago, for appellant.

Marc Bernabei, State's Attorney, of Princeton (Gary F. Gnidovec, of State's Attorneys Appellate Prosecuor's Office, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Following a bench trial, the defendant, James E. Wittenmyer, was found guilty of three counts of aggravated criminal sexual abuse (Ill. Rev. Stat. 1989, ch. 38, par. 12—16) and one count of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14). The trial court sentenced the defendant to concurrent five-year terms of imprisonment on each abuse conviction, and to seven years in prison

on the assault conviction. The sentence on the assault conviction was to run consecutive to the other three sentences. The defendant appeals and we affirm as modified.

The record showed that in the summer of 1989, D.L., age 10, and her brother G.L., age 13, spent most of the summer residing with their grandmother and the defendant, the children's step-grandfather. The children's mother, Judy Lopez, had separated from their father and moved to La Moille, where her mother and the defendant lived. In late June 1989, Judy Lopez attempted suicide and was hospitalized. On advice of her doctors, she spent a month in New Jersey with her brother and his family. D.L., G.L. and their younger brother and sister lived with their grandparents.

D.L. testified that in the last incident of alleged abuse, she had been sent to her mother's home to retrieve a pair of biking shorts. The defendant accompanied her to the house, which the record showed was only a few blocks from the grandparent's home. She testified that when she and the defendant were in the basement looking for the shorts, the defendant backed her up against a cabinet. The defendant got down on his knees and lifted D.L.'s shirt and bra. She testified that he rubbed and sucked her breasts. The defendant then put his hands down D.L.'s pants and rubbed her vagina. He then started to insert his finger in her vagina. She stated that she knew this was occurring, because she felt pain and she could feel him push "up and down." She testified that he inserted his finger as far as the first knuckle. This incident served as the basis for two of the counts of aggravated criminal sexual abuse and the aggravated criminal sexual assault charge.

G.L. testified that while living in his grandparent's home, he was sexually abused on a number of occasions by the defendant. Concerning the incident constituting grounds for the third count of aggravated criminal sexual abuse, G.L. testified that one evening he was alone in his grandparents' living room watching television. The defendant returned home from work around 10:30 p.m. After the defendant took a shower, he joined G.L., who was lying on the couch in the living room. G.L. testified that the defendant sat down next to him on the couch. According to G.L., the defendant pulled out his penis and asked G.L. to give him "a rub." G.L. rubbed the defendant's penis between 45 seconds and a minute.

Because D.L. was under the age of 13 at the time of the alleged abuse, the State was allowed to submit testimony concerning D.L.'s out-of-court statements, pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10).

Detective Brett Taylor testified to three interviews with D.L. occurring on September 4, 1989, September 15, 1989, and February 22, 1990. Prior to trial, a hearing had been held at which the trial court determined that the circumstances surrounding the statements provided sufficient safeguards of reliability.

Taylor testified in detail about what D.L. said at each interview. Taylor testified that D.L.'s story concerning the incident was basically the same in each interview. However, the insertion of the finger was not mentioned until the last interview on February 22, 1990. As D.L. testified at trial, Taylor stated that D.L. expressed confusion at the last interview and told the investigators that in the earlier interviews she was under the impression that they were asking her whether the entire finger had been placed in her vagina. In his September 4, 1989, report Taylor stated that D.L. did not know if the finger actually went into her vagina. The September 15, 1989, report made no mention of any attempt to insert the finger or that D.L. felt any pain. However, Taylor testified that D.L. did discuss this during the September 15 interview, but that he forgot to mention it in his written report.

The testimony of the State's witnesses and their cross-examination also brought out numerous other alleged incidents in which the defendant sexually abused D.L. and G.L..

The defendant testified and denied that he ever sexually abused the children. He testified that the time he went with D.L. to look for the biking shorts, G.L. went with them.

Other family members also testified concerning the events surrounding the alleged abuse, and the character of the children and their mother. For example, Tom Pontellis talked with the children on the Sunday of Labor Day weekend 1989 about the alleged abuse. Pontellis testified that G.L. told him that the defendant had G.L. rub the defendant's penis two or three times while they were alone in the car. D.L. told Pontellis that the defendant rubbed "her private parts" in an upstairs bedroom and in the basement of the defendant's home.

The trial court found that although there were inconsistencies in the children's stories, the trial court found their testimony to be "virtually not shaken." The trial court found the defendant guilty on all four counts.

On appeal, the defendant contends there was insufficient credible evidence to support his conviction on any of the counts. The defendant points to the inconsistencies in the children's testimony concerning the number of incidents, the location of the alleged abuse, and a number of other discrepancies in the testimony of the witnesses. The

defendant contends in particular that he was not proven guilty of aggravated criminal sexual assault beyond a reasonable doubt. He cites the fact that D.L. did not indicate that the defendant's finger penetrated her vagina until the third interview with authorities on February 22, 1990.

██ ■ When presented with a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) The credibility of the witnesses and the weight to be given their testimony is exclusively within the province of the trier of fact. (*People v. Hudson* (1990), 198 Ill. App. 3d 915, 556 N.E.2d 640.) Further, minor inconsistencies in the testimony do not, of themselves, create a reasonable doubt. *People v. Brisbon* (1985), 106 Ill. 2d 342, 478 N.E.2d 402.

■ A review of the record shows that the basic facts related by D.L. and G.L. concerning the two incidents of abuse serving as the basis for the indictments against the defendant remained consistent. Although this court might have reached a different determination based on the evidence, we will not substitute our judgment for that of the trier of fact.

Regarding the assault conviction, it is true that D.L. did not reveal the fact that the defendant's finger penetrated her vagina until over six months after the incident. Detective Taylor's report of the September 4, 1989, interview of D.L. states that D.L. did not know if the the finger penetrated; however, she did feel pain. The report of the September 15, 1989, interview makes no mention of any attempted penetration. However, D.L. testified that she had not understood whether the investigators were talking about partial or complete insertion of the finger when she was interviewed in September, and that was the reason she did not mention this detail. The trial court apparently found D.L.'s explanation credible.

Viewing the evidence in the light most favorable to the prosecution, we find the trial court could have found the essential elements of aggravated criminal sexual abuse and sexual assault beyond a reasonable doubt.

The defendant asserts that he was denied a fair trial through a combination of the destruction of handwritten notes taken by Detective Taylor during his interviews with D.L., and the introduction of evidence concerning the statements made by D.L. to Detective Taylor and the other investigators. Detective Taylor testified that after he

wrote up his reports on the interviews with D.L., he destroyed his handwritten notes. The defendant argues that given the circumstances under which the act of sexual penetration was eventually revealed, the notes might have been invaluable to the defense.

Additionally, the defendant argues that use of D.L.'s out-of-court statements in this case "expose the danger of misuse" of section 115—10 of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 115—10). Section 115—10 allows, in the prosecution for sexual acts perpetrated on a child under the age of 13, evidence of the child's out-of-court statements to be admitted as an exception to the hearsay rule. Defendant argues that the three interviews of D.L. were within the complete control of the Bureau County sheriff's department and the State's Attorney's office. The defendant contends the State was able to use section 115—10 to shore up D.L.'s testimony.

■ We find no merit to the defendant's contentions on this issue given the fact that the defense had a full opportunity to cross-examine D.L. during the trial and confront her with the inconsistencies in her account.

The defendant contends the trial court erred in imposing a consecutive sentence for the sexual assault conviction. We agree. Section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a)) provides in pertinent part: "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12—13 or 12—14 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively."

■ The defendant's three aggravated criminal sexual abuse convictions were Class 2 felonies for violations of section 12—16 of the Criminal Code. The sexual assault conviction was a Class X felony brought pursuant to section 12—14 of the Criminal Code. Thus in the instant case the one Class X felony conviction was also the only violation of section 12—13 or 12—14 charged against the defendant. We interpret section 5—8—4(a) to require both a conviction for a Class X or Class 1 felony plus an additional conviction for a violation of section 12—13 or 12—14 before a consecutive sentence can be imposed. A single conviction for violation of section 12—14, which is a Class X felony, cannot serve as the basis for consecutive sentences when the defendant has no other convictions of violations of section 12—13 or

12—14, and has not been convicted of any other Class X or Class 1 felony. Therefore, the trial court erred in imposing a consecutive sentence on the defendant.

Pursuant to our authority under Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), we modify the judgment of the circuit court of Bureau County to vacate defendant's consecutive sentence for aggravated criminal sexual assault and order that defendant's sentence for that conviction be served concurrently to defendant's other sentences. In all other respects the judgment of the circuit court is affirmed.

Affirmed as modified.

BARRY and GORMAN, JJ., concur.