THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
NELSON BELL, Defendant-Appellant.

Third District   No. 3—91—0831

Opinion filed September 23, 1992.

632

Harold M. Jennings, of Jennings, Novick, Taseff, Smalley & Davis, P.C., of Bloomington (Ronald L. Lewis, of counsel), for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Defendant Nelson Bell was indicted on two counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(b)(1)) and two counts of aggravated criminal sexual abuse (Ill. Rev. Stat. 1991, ch. 38, par. 12—16(c)(1)(i)). Following a trial by jury, defendant was convicted of two counts of aggravated criminal sexual assault and sentenced to two consecutive six-year terms of imprisonment. Defendant raises the following issues on appeal: (1) whether he was proved guilty beyond a reasonable doubt; (2) whether he was denied a fair trial due to prosecutorial misconduct during closing argument; (3) whether defendant's counsel was ineffective; and (4) whether defendant was improperly sentenced to mandatory consecutive sentences. For the reasons stated below, we affirm defendant's conviction and sentence on one count of aggravated criminal sexual assault, reduce the defendant's second conviction to aggravated criminal sexual abuse, and remand for resentencing.

The victims in this case are the defendant's nieces, D.W. and E.W., who were 9 and 12 years old, respectively, at the time the offenses were committed. The children, who lived with their mother in Bloomington, came to visit defendant and his wife at their home in Peoria in March of 1991. D.W. testified that she was watching televi-

sion when the defendant asked her to go into the bathroom with him. Defendant's wife, whom the children called Aunt Shirley, was at work at the time. D.W. pulled down her pants and bent over at defendant's request, and defendant looked at D.W.'s vagina "to see if anybody was bothering [her]." Defendant then touched D.W.'s vagina with his finger. Defendant then told D.W. to pull up her pants, and she went back to watching television.

D.W. further testified that she told Aunt Shirley about the incident a few days later, but she did not believe her. D.W. also called her mother and told her what had happened. A police officer eventually took the girls from the defendant's home and interviewed them at the police station. They were also questioned by an investigator for the Department of Children and Family Services (DCFS).

On cross-examination, D.W. stated that defendant "handled [her] vagina." Defense counsel later asked D.W. if defendant "just put his hands on your, as you describe, vagina or what?" D.W. responded: "No. He put his finger—he was rubbing my vagina."

E.W., the older sister of D.W., also testified about an incident involving the defendant while the children were visiting in March of 1991.

"Q. [Assistant State's Attorney]: Was there sometime during the week that you were at Uncle Nelson and Aunt Shirley's that Uncle Nelson asked to check you?

A. [E.W.]: Yes.

Q. Could you tell us about that, please[?]

A. When I was in the living room sitting on the chair he asked me to come downstairs in the basement. And he told me to pull my pants down, so I did. Then he told me to bend down and then he rubbed my private.

Q. Rubbed your privates?

A. Yeah.

Q. What—what part of your body are your privates at?

A. Where I pee at.

Q. Okay. And what did he rub your privates with?

A. His finger.

Q. And did he say anything when he did that to you?

A. He asked me, Has anybody been touching me.

Q. He said this when he—did he just—did he rub you or put his finger in you? What exactly did he do?

A. Rubbed it.

Q. Okay. With what?

A. His first finger.

Q. Okay. Was there anybody else in the basement when this happened?

A. No."

Like D.W., E.W. testified that she told Aunt Shirley what had happened and she also told her mother during a telephone call. E.W. further stated that the police took her from defendant's home and questioned her at the police station. On cross-examination, defense counsel asked E.W. if defendant put his hands on her private parts. E.W. answered "Yeah, he rubbed it."

Officer Tommie J. Moton of the Peoria police department testified that she went to the defendant's residence on March 28, 1991, and removed D.W. and E.W. from the home. Moton interviewed each of the girls separately at the police station. With respect to D.W., Moton testified:

"A. [Officer Moton]: She told me she went into the bathroom and she pulled her pants down, because according to her, she knew this was expected of her. And her uncle stood in front of her, pulled—pulled her—used his fingers and pulled her vagina part. She said, 'private apart.' She said she was told to stand up, turn around and bend over, and he pulled her privates apart. And she did like this, meaning on her privates. (Indicating.)

MS. MERMELSTEIN [Assistant State's Attorney]: Would the record reflect that the witness ran her first finger of her right hand up, in an up-and-down direction?

THE COURT: It may."

Moton later testified regarding E.W.:

"A. [Officer Moton]: [E.W.] told me she was told by her uncle to go to the basement play room so he could check her to see if someone had messed with her.

Q. And did she tell you she went to that room?

A. She said she went to the—went to the play room and her uncle told her to pull her pants down, and he looked at her and felt her privates.

Q. Did you have her describe where her privates were?

A. She pointed to the area between her legs."

The final witness to testify for the State was Cindy Flannery, a child protective investigator for DCFS. Flannery stated that she interviewed D.W. on March 29, 1991. When asked what D.W. told her during the interview, Flannery testified:

"A. She told me that she and her sister had been staying there during their Easter vacation from school and that one

day earlier that week her Uncle Nelson had told her that he wanted to check to see if anybody had been messing with her and told her to go into the bathroom. And she went into the bathroom and he told her to take her pants down which she did. And she turned around. He told her to turn around and she bent over. And she told me that he looked at her privates. I then asked her what her privates were. And she explained to me, that's where she goes pee. And she told me that her Uncle Nelson then looked at her and pulled her apart and ran his finger up inside in her privates."

Flannery did not testify regarding any statements made by E.W.

Defendant testified that he and his wife had been married for 20 years and they were the parents of three adopted children. Defendant admitted asking the children if anyone had been "messing with them," but he denied fondling the girls. Defendant became aware of the girls' allegations when his wife told him what the girls had said to her.

Shirley Bell, the defendant's wife, testified that she picked up D.W. and E.W. and brought them to Peoria on Monday, March 25. Later that day, Mrs. Bell went to work, leaving the house at 4:45 p.m. and returning at approximately 7:45 p.m. Upon her return, she saw D.W. and E.W. and they made no complaints to her. The following day, however, D.W. told Mrs. Bell that defendant had been "messing with" them. Mrs. Bell stated that she did not believe the children because they told her that defendant had messed with them "that day," and she had been with them all day. Mrs. Bell told the defendant about the children's allegations later that day.

The defendant first contends that the State failed to prove beyond a reasonable doubt that he committed aggravated criminal sexual assault. Specifically, defendant maintains that there was insufficient proof of sexual penetration of either D.W. or E.W.

The defendant was convicted of violating section 12—14(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(b)(1)) in that he was 17 years of age or older and committed an act of sexual penetration with victims who were under 13 years of age when the act was committed. In the context of this case, "sexual penetration" is defined as "any intrusion, however slight, of any part of the body of one person *** into the sex organ *** of another person" (Ill. Rev. Stat. 1991, ch. 38, par. 12—12(f)). When a defendant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

element of the crime proved beyond a reasonable doubt. (*People v. Schott* (1991), 145 Ill. 2d 188, 582 N.E.2d 690; *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Whether penetration occurred is a question of fact, which is to be evaluated by the jury as the trier of fact, and a lack of detail in a witness' testimony only affects the weight of the evidence. *People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183.

■ We find that there was ample evidence presented to establish proof of sexual penetration of D.W. D.W. testified that defendant "handled" and "rubbed" her vagina. Officer Moton testified that D.W. told her that defendant used his fingers and "pulled her privates apart." Cindy Flannery testified that D.W. told her that defendant "pulled her apart and ran his finger up inside in her privates." Defendant, citing *People v. Kelly* (1989), 185 Ill. App. 3d 43, 540 N.E.2d 1125, argues that D.W.'s testimony did not establish penetration, and that the testimony of Moton or Flannery cannot be used to show penetration because it does not coincide with D.W.'s testimony. We believe that the defendant has misconstrued *Kelly*. *Kelly* held that the State failed to prove penetration where the victim testified that the defendant had touched her in her "naughty place" and where a witness testified that the victim told her that the defendant had "poked" her. *Kelly* did not hold, as the defendant seems to suggest, that hearsay statements admitted under section 115–10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 115–10) may not be used to establish penetration unless the victim also clearly testifies to penetration. Such a requirement is contrary to the plain language of the statute, which allows testimony of hearsay statements by victims of sexual offenses under 13 years of age describing any complaint or matter or detail "pertaining to any act which is an *element* of [such] an offense" (emphasis added) (Ill. Rev. Stat. 1991, ch. 38, par. 115–10). We hold that defendant was proved guilty beyond a reasonable doubt of aggravated criminal sexual assault of D.W.

There is substantially less evidence of penetration, however, with regard to E.W. E.W. testified that defendant rubbed her privates with his finger. Officer Moton testified that E.W. told her that defendant "felt her privates." If these statements were the only evidence in the record concerning penetration, we would deem them sufficient to affirm the defendant's conviction under the *Collins* standard, in view of the fact that the jury is entitled to draw reasonable inferences from the evidence, including an inference of penetration. (See *Shum*, 117

Ill. 2d 317, 512 N.E.2d 1183.) We note, however, the following testimony:

"Q. [Assistant State's Attorney]: [Defendant] said this when he—did he just—did he rub you or put his finger in you? What exactly did he do?

A. [E.W.]: Rubbed it."

While, as noted above, the jury is entitled to draw inferences from the evidence, such inferences must be reasonable. Although under other circumstances a jury might reasonably infer that an act of penetration occurred based on the testimony that defendant rubbed and felt E.W.'s privates, such an inference is not reasonable where E.W.'s answer to the specific question of whether any penetration took place was implicitly negative. We hold, therefore, that there was insufficient evidence of penetration of E.W. and defendant was not proved guilty beyond a reasonable doubt of aggravated criminal sexual assault upon E.W. We further find that there was sufficient evidence that defendant committed an act of sexual conduct with E.W. Sexual conduct is "any intentional or knowing touching or fondling *** of the sex organs *** of the victim *** for the purpose of sexual gratification or arousal of the victim or the accused." (Ill. Rev. Stat. 1991, ch. 38, par. 12—12(e).) Accordingly, pursuant to our authority under Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), we modify defendant's conviction to the lesser included offense of aggravated criminal sexual abuse (Ill. Rev. Stat. 1991, ch. 38, par. 12—16(c)(1)(i)) and remand for sentencing on that offense. See *People v. Patel* (1991), 213 Ill. App. 3d 688, 572 N.E.2d 314 (aggravated criminal sexual abuse is a lesser included offense of aggravated criminal sexual assault); *People v. Finley* (1988), 178 Ill. App. 3d 301, 533 N.E.2d 94 (same); *People v. Smith* (1987), 152 Ill. App. 3d 589, 504 N.E.2d 850 (same).

Defendant also contends that he was deprived of a fair trial due to improper statements by the prosecutor during closing argument. First, defendant claims that the prosecutor misstated the evidence by arguing:

"Nelson Bell, by those little girls' testimony, took his fingers, obviously parts of his body, and rubbed them through the lips of their vaginas."

Next, defendant argues that the following comments improperly appealed to the sympathies and fears of the jury:

"But what did they do when they were alone with their Aunt Shirley who they told in the car coming home from church, 'Uncle Nelson's been messing with us'? She blows them off,

and then the next day leaves them home alone with this man. These aren't adults, these are little kids. Where do little kids go for protection? Where do your little kids go for protection? One would assume they would go to the parents and the closest ones to them. But in this case it didn't work for [E.W.] and [D.W.]. *** And imagine, look what happened to these little girls, 10 and 12-year-old children; they are taken from their aunt and uncle's home after they'd been molested, they go down to the police station, they're interrogated in interview rooms by themselves by this woman they never met before about their molestation, they are then taken to the Southside Mission and left there for the night, no mom, no dad."

Defendant did not object to any of the statements related above, nor did he refer to them in his post-trial motion. Both a timely objection at trial and a complaint of error in a written post-trial motion are necessary to preserve an issue for review. (*People v. Fields* (1990), 135 Ill. 2d 18, 552 N.E.2d 791; *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) These alleged errors have been waived.

■ Furthermore, even if we were to consider these comments under the plain error rule, as defendant requests, we would not reverse defendant's conviction. Prosecutors have a great deal of latitude in making closing arguments, and for a remark to be deemed reversible error, it must have resulted in substantial prejudice to the accused, such that the verdict would have been different had it not been made. (*People v. Morgan* (1991), 142 Ill. 2d 410, 568 N.E.2d 755.) Statements which are based upon facts in evidence, or upon reasonable inferences drawn from the evidence, are within the scope of proper argument. (*Fields*, 135 Ill. 2d 18, 552 N.E.2d 791.) Moreover, it is not improper for a prosecutor to comment upon the evils of crime and its impact on the victim. *People v. Carter* (1985), 132 Ill. App. 3d 523, 477 N.E.2d 1307.

With respect to the second set of comments of which defendant complains, we find that they were permissible comment upon the impact of the crime on the victims. As for the alleged misstatement by the prosecutor that the defendant rubbed his fingers through the lips of the girls' vaginas, we find that this statement was supported by the evidence as it pertains to D.W. We believe, however, that this was an overstatement of the evidence regarding defendant's actions with E.W. Nevertheless, we find that any error created by this comment was harmless. The jury was instructed that closing arguments are not evidence and that they should disregard any statements not based on

the evidence. We do not believe that this isolated remark deprived the defendant of a fair trial.

Defendant also maintains that his defense counsel was ineffective in that he: (1) failed to appear for a scheduling conference; (2) failed to file any substantive pretrial motions; (3) delivered an "incoherent" closing argument which did not address the lack of penetration evidence or counter the prosecutor's argument; (4) failed to object to improper arguments by the prosecutor; and (5) failed to object to jury instructions on aggravated criminal sexual assault when the evidence did not support such a charge.

To establish ineffective assistance of counsel, defendant must show that his counsel's performance was deficient in that it fell below an objective statement of reasonableness and that defendant was prejudiced such that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) Errors in trial strategy, judgment or tactics alone will not render counsel's performance deficient. (*People v. Siverly* (1990), 194 Ill. App. 3d 981, 551 N.E.2d 1040.) A court may dispose of an ineffectiveness claim based on a lack of sufficient prejudice before deciding whether counsel's performance was deficient. *People v. Eddmonds* (1991), 143 Ill. 2d 501, 578 N.E.2d 952.

■ Defendant does not explain how he was prejudiced by counsel's failure to appear at the scheduling conference. The trial court granted a continuance, and we can discern no prejudice to defendant. Similarly, defendant does not assert any prejudice due to counsel's failure to file any pretrial motions, nor does he suggest what motions should have been filed. Moreover, we note from the record that the parties engaged in pretrial discovery. Defendant has failed to show that he was prejudiced.

We also find no merit in defendant's contention that his defense counsel erred in failing to emphasize the lack of evidence concerning penetration during an "incoherent" closing argument. Defense counsel argued that the offenses did not happen and that the children's testimony was not credible. Counsel did not try to persuade the jury that the defendant's actions did not amount to penetration. This was clearly a reasonable tactical choice, since the latter argument could imply that counsel was conceding that some improper touching had occurred. We find no error.

We further find that defendant was not prejudiced by defense counsel's failure to object to the prosecutor's closing argument nor by

his lack of objection to instructing the jury on aggravated criminal sexual assault. As noted previously, the prosecutor's comments were either supported by the evidence or harmless error. Moreover, decisions on what matters to object to and when to object are generally matters of trial strategy, and failure to object to portions of closing arguments does not establish incompetent representation. (*People v. Pecoraro* (1991), 144 Ill. 2d 1, 578 N.E.2d 942.) With regard to the jury instructions, although we have determined that the evidence was insufficient to prove penetration of E.W., we deem it unlikely that an objection to instructing the jury on aggravated criminal sexual assault would have been successful in view of the fact that the trial court denied defense counsel's motion for a directed verdict at the close of the State's case. Defense counsel is not ineffective for failing to make losing motions or objections. (*People v. McCarthy* (1991), 213 Ill. App. 3d 873, 572 N.E.2d 1219.) In addition, any possible prejudice to defendant has been cured by our modification of defendant's conviction to aggravated criminal sexual abuse.

■ Finally, defendant's argument that he was improperly sentenced to mandatory consecutive sentences under section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(a)) because the offenses were not part of a single course of conduct is moot. Section 5—8—4(a) provides in part:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily · injury, or where the defendant was convicted of a violation of Section 12—13 or 12—14 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(a).)

Defendant now stands convicted of one count of aggravated criminal sexual abuse, a Class 2 felony (Ill. Rev. Stat. 1991, ch. 38, par. 12—16), and one count of aggravated criminal sexual assault, a Class X felony (Ill. Rev. Stat. 1991, ch. 38, par. 12—14). As this court stated in *People v. Wittenmyer* (1991), 216 Ill. App. 3d 1042, 1047-48, 576 N.E.2d 528, 531-32, *appeal allowed* (1991), 142 Ill. 2d 664, 584 N.E.2d 139:

> "We interpret section 5—8—4(a) to require both a conviction for a Class X or Class 1 felony plus an additional conviction for a violation of section 12—13 or 12—14 before a consecutive sen-

tence can be imposed. A single conviction for violation of section 12—14, which is a Class X felony, cannot serve as the basis for consecutive sentences when the defendant has no other convictions of violations of section 12—13 or 12—14, and has not been convicted of any other Class X or Class 1 felony."

Section 5—8—4(a) is, therefore, not applicable to defendant.

For the reasons stated above, we affirm defendant's conviction and sentence on one count of aggravated criminal sexual assault, modify the defendant's second conviction to aggravated criminal sexual abuse and remand for sentencing on the modified offense.

Affirmed as modified and remanded.

GORMAN and HAASE, JJ., concur.