JUDITH HEIFNER, Plaintiff-Appellee, v. BOARD OF EDUCATION OF MORRIS COMMUNITY HIGH SCHOOL DISTRICT No. 101, GRUNDY COUNTY, Defendant-Appellant.

(No. 74-150; )

Third District—October 6, 1975.

John W. Hynds, of Hynds & Hynds, of Morris, for appellant.

R. W. Deffenbaugh, of Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Plaintiff, a teacher in contractual continued service with defendant school board, filed a complaint under provisions of the Administrative Review Act (Ill. Rev. Stat., ch. 110, § 264 *et seq.*) for administrative review of an order for her dismissal for cause entered by defendant after a hearing pursuant to section 24—12 of the School Code (Ill. Rev. Stat., ch. 122, § 24—12). The circuit court reversed the order of dismissal, whereupon defendant board perfected this appeal.

On March 30, 1973, notice of dismissal was served upon plaintiff reciting as cause "[your] failure to comply with the professional growth requirements of the district and your stated intention of not complying with that portion of teacher's contract and board policy except on your own terms." The effective date of dismissal was designated in the notice as "the close of the 1972-73 school term." After the notice was served, a prehearing bill of particulars was furnished plaintiff by defendant reciting in relevant parts:

"On March 10, 1965 the School Board * * * and the High School Teacher's Association entered a negotiation agreement which in part provided:

After April 1, 1965, any teacher who does not have a Master's Degree when initially employed to teach * * * * shall earn a Master's Degree within six years of his initial employment date. * * *:

This provision is included in the * * * agreement of every subsequent year and annually the School Board has reaffirmed this policy. Your contract * * * commenced with the 1967-

68 school year and the six year period \* \* \* expires at the end of the 1972-73 school term.

In February, 1973 you were advised by Harold Sutter, Superintendent, that you were not complying with the professional growth requirements. You were advised \* \* \* the Board would grant a leave of absence [without pay] as the only type of extension \* \* \* for complying \* \* \*. On March 14, 1973, you requested leave of absence. At the March 28, 1973 School Board meeting you withdrew your request."

The evidence at the public hearing on the dismissal charge indicates that plaintiff was first hired for defendant's system on June 8, 1967, by Claude Rose who was superintendent until 8 months preceding the dismissal notice when Mr. Sutter succeeded him. She held a B.A. degree at the time, and it was a written provision of her contract then and for all subsequent years that:

"This contract can be promptly terminated by said Board of Education whenever the said teacher fails to carry out established rules of the Board of Education \* \* \*."

It is admitted by all parties that one such established rule identified with the contract and alluded to in the bill of particulars was the professional growth requirements rule; it is admitted by all parties that it was published in copies of salary schedules and teachers' manuals furnished, or available, to plaintiff, from year to year. These requirements were, without any written relevant alteration whatever during the entire period of plaintiff's tenure, as follows:

"PROFESSIONAL GROWTH: In order to assure professional growth, the following provisions apply effective September 1, 1964.

(1) After April 1, 1965, any teacher who does not have a Master's degree when initially employed to teach at M.C.H.S. shall earn a Master's degree within 6 years of his initial employment date.

(2) Teachers with a Bachelor's degree will be expected to secure 6 semester hours of graduate credit, or the equivalent as explained below, in each 3 year period.

(3) Teachers with a Master's degree will be expected to secure 3 semester hours, or the equivalent as explained below in each 3 year period.

(4) Equivalent credits may be earned by (a) traveling, (b) having an article published in a recognized education journal (c) taking undergraduate courses in the teaching field, either by audit or for credit; (d) doing a classroom research or experimental project, (3) doing technical work during summer vacation which

applies directly to the teaching assignment, or (f) any other worthwhile endeavor.

However, these equivalent credits must be approved in writing by the Superintendent prior to being undertaken in order to be counted towards meeting the professional growth requirement, and they will not be counted toward advancement in the salary schedule. Only graduate level courses, for which a transcript can be furnished, may be used in progressing from one column to another on the schedule.

(5) Compliance with the professional growth requirements will be checked at 3 year intervals. *Failure to comply will cause a teacher's salary to be frozen where it is at the time compliance is checked.*

(6) * * *." (Emphasis added.)

It does not appear plaintiff's professional growth was checked at the three-year interval and although she was advanced in the salary schedule each year of her tenure, she did in fact fail to obtain her master's degree within the six-year period stipulated in the professional growth requirements. She denies, however, that such failure, under the board policy is grounds for dismissal for cause where the written policy incorporated to her contract by reference explicitly and solely provides the lesser sanction at subparagraph (5) that noncompliance with the professional growth requirements will result only in a "salary freeze," *i.e.*, nonadvancement in the increments of the salary schedules; a sanction she admits to having anticipated. Neither the authority of the board to make the rule, nor its reasonableness are challenged.

Defendant contends that subparagraph (1) of the regulation, by use of the word "shall" is a mandatory requirement giving rise to grounds for dismissal for noncompliance, and that this subparagraph may not be read in connection with the lesser sanction at subparagraph (5) which defendant says relates exclusively to noncompliance with the immediately preceding subparagraphs (2) and (3) only.

Considerable evidence was received at the hearing by the board, in support of its charges, concerning the philosophy and meaning of the professional growth regulation as the present board understands and wishes to enforce it; to show also that various school personnel, including Mr. Sutter, interpreted it consistently with the board's understanding to mean that noncompliance with the master's degree requirement in paragraph (1) was cause for dismissal, whereas noncompliance with the other paragraphs was grounds only for a salary freeze; and to show further that on various occasions this interpretation was communicated to plaintiff. In respect to this testimony and plaintiff's denials of such

understanding, defendant argues that the board drew inferences of fact and made judgments as to credib:lity of witnesses, all adverse to plaintiff and in favor of the board, to establish plaintiff's awareness that noncompliance with paragraph (1) of the regulation was grounds for dismissal. The board asserts further that these inferences and find:ngs of the board, in support of its order, constitute determinations of fact which are b:nding on the courts in administrative review.

■■ Findings by an administrative agency on questions of fact are taken as prima facie true and correct and may not be disturbed on administrative review unless they lack substantial foundation in the record or are contrary to the manifest weight of the evidence. (*Lo Piccolo v. Department of Registration & Education,* 5 Ill.App.3d 1077, 284 N.E.2d 420 (1st Dist. 1972).) Insofar as the regulation itself is concerned, however, the governing issue here is not the factual question of whether plaintiff, in failing to get her master's degree, was aware of the board's interpretation of its rule that such failure was grounds for dismissal, but the *legal* question of whether the board's interpretation of its regulation is correct.

In *Last v. Board of Education,* 37 Ill.App.2d 159, 185 N.E.2d 282 (2d Dist. 1962), the board dismissed a tenured teacher for her failure to abide the terms of her contract which incorporated by reference a regulation of the board pertaining to professional growth requirements. It was decided in that case, that irrespective of legislative fiat, schools boards, as administrative agencies, may lawfully adopt reasonable rules requiring professional growth as a condition to continued tenure. Such rules as are lawfully adopted by an administrative agency pursuant to statutory authority have the force of law, and the administrative agency making them becomes itself bound by them. (*Margolin v. Public Mutual Fire Insurance Co.,* 4 Ill.App.3d 661, 281 N.E.2d 728 (1st Dist. 1972).) In interpreting their meaning, the same rules of construction apply to administrative regulations as are applied by courts in the construction of statutes. (*Rucker v. Wabash R.R. Co.,* 418 F.2d 146 (7th Cir. 1969).) And while the interpretation given by an administrative agency to its rules and regulations is entitled to respectful consideration and will not be overruled unless plainly erroneous (*Bowles v. Mannie & Co.,* 155 F.2d 129 (7th Cir. 1946), *cert. denied,* 329 U.S. 736, 91 L.Ed. 636, 67 S.Ct. 82 (1946)),* it is not, in the manner of a properly supported finding of fact, conclusive on the courts in administrative review. (See 2 Am. Jur. 2d *Administrative Law* § 646 (1962).) An erroneous construction of any

---

* See *Williams v. General Foods Corp.,* 492 F.2d 399, 408 (7th Cir. 1974); *cf.* *Hardway v. Board of Education,* 1 Ill.App.3d 298, 274 N.E.2d 213 (5th Dist. 1971).

88

statute or regulation by an administrative agency is not binding. (*Mystik Tape v. Pollution Control Board*, 16 Ill.App.3d 778, 306 N.E.2d 574 (1st Dist. 1973).) We are persuaded that the board's interpretation of the language of its regulation is erroneous.

The provisions of defendant's professional growth regulation appear to be mandatory requirements. The sanction for failure to comply with these mandatory requirements, however, is stated at paragraph (5), without exception, as being "cause [for freezing] a teacher's salary * * *." It is a cardinal canon of statutory construction that the expression of one thing or one mode of action in an enactment excludes all others. (*Board of Education v. Board of Education*, 321 Ill.App. 131, 52 N.E.2d 274 (2d Dist. 1943).) Hence, the explicit designation of one sanction in the regulation excludes an intention to include by implication others more drastic. Insofar as the order for plaintiff's dismissal depends for its validity upon the sanctions imposed by this specific regulation itself, it is not sustainable.

By reference, the professional growth regulation was incorporated into plaintiff's contract. However even without specific reference, a relevant and valid regulation which is in existence and applicable at the time a contract is made should be read into it. The written words of the contract itself and the instrument it incorporates must be read together, and together they become the legal source for finding the intention of he parties. (17 Am. Jr. 2d *Contracts* §§ 257-263 (1964).) Where possible, effect must be given to all its parts (*J. J. Brown Co. v. J. L. Simmons Co.*, 2 Ill.App.2d 132, 118 N.E.2d 781 (1st Dist. 1954)), and any ambiguity must be construed most strongly against the author. (*Furst v. Board of Education*, 20 Ill.App.2d 205, 155 N.E.2d 654 (2d Dist. 1959).) Whether the words used create an ambiguity is a question of law. (*Coney v. Rockford Life Insurance Co.*, 67 Ill.App.2d 395, 214 N.E.2d 1 (3d Dist. 1966).) Where ambiguous language appears in a contract, previous and contemporary transactions and facts may be considered to ascertain the sense in which the parties used particular terms (*Furst v. Board of Education*), but not to show a meaning unexpressed in the language or contrary thereto (4 Williston *On Contracts*, § 629, at 923 (3rd ed. 1961), and evidence of the latter kind must be disregarded. (See Williston, § 631.) Where one intention is expressed in one clause in an instrument and a different conflicting intention appears in another clause in the same instrument, it is the better rule that that intention should be given full effect which appears in the more principal and specific clause, and that the general clause should be subjected to such modification or qualification as the specific clause makes necessary. Williston, § 624.

The contract document here, considered with the provisions of the regulation it incorporates, is ambiguous. The professional growth regulation specifically provides for the sole sanction of a salary freeze for noncompliance with any of its terms. The contract incorporates this regulation with any others, and to assure that all established rules are executed *according to their terms*, provides a general sanction that the contractual relation can be terminated if the teacher fails to carry out any rule. This general sanction of dismissal may be construed as providing to the board, by contract, an optional sanction as an alternative of the one contained in the professional growth regulation itself, or the specific sanction in that regulation may be deemed as a qualification of and exception to the general sanction which its supersedes. We believe the latter to be more logical.

██ In our view the parol testimony does not provide support for the board's conclusion that a different sanction was intended to apply to paragraph (1) of the regulation than to the other paragraphs, and all parties disavow any intention that noncompliance with paragraphs (2) and (3) was grounds for dismissal. The board's conclusion that paragraph (1) of the regulation was to be treated differently than the other paragraphs does not appear to be addressed to any testimony reconciling language of the contract; it derives from an erroneous interpretation of the regulation alone. Since the principal objective of the contract is to give effect to the terms of the regulations, and not to change "established rules," we hold that the general language of the contract is modified in meaning to the extent made necessary by the specific recitals of the regulation it incorporates to mean that:

> "This contract can be promptly terminated by said Board * * *
> whenever the teacher fails to carry out established rules [unless
> the specific rule itself contains its own different sanction which
> will apply] * * *."

This construction facilitates the principal objective of the language of the contract that "established rules" of the board be given effect and carried out. We conclude, therefore, that the board's order of dismissal is unsupported by the record and the law.

Defendant argues that prejudicial error resulted from plaintiff's refusal to be examined under section 60 of the Civil Practice Act (Ill. Rev. Stat., ch. 110, § 60) during the course of the administrative hearings. The record of the administrative hearing, filed in answer to the complaint in these proceedings for administrative review, indicates that the hearings before the board were recessed for certification of a question to the circuit court. The question was whether plaintiff was required by

law to testify there under section 60. The record of the proceedings in the circuit court *on that certified issue* is not here, nor is any suggestion made that an appeal from the court's disposition on that certified issue was ever perfected. In the proceedings on administrative review of the board's *final decision,* there is no indication that this issue was ever raised or passed upon in the circuit court, or presented as an issue here by the notice of appeal. Accordingly, we are precluded from entertaining as grounds for reversing the circuit court's order on review of the *final decision* of the board, matters which the record indicates the circuit court did not consider and was not asked to consider in the proceedings there for administrative review.

Another issue is raised as to whether the defendant, in lieu of dismissal, had the legal authority to require plaintiff to take a one-year leave of absence without pay to comply with the professional growth requirement for a master's degree and whether her refusal to do so was grounds for dismissal. In view of our interpretation of that regulation and our disposition on previous issues, it is not necessary to consider this additional question.

The judgment of the circuit court is affirmed.

ALLOY and STENGEL, JJ., concur.