THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES CORRIGAN, Defendant-Appellant.

Fourth District   No. 4—84—0208

Opinion filed January 7, 1985.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office of Springfield, for appellant.

Anthony B. Cameron, State's Attorney, of Quincy (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

After jury trial, defendant was convicted of the offenses of residential burglary and burglary (Ill. Rev. Stat. 1983, ch. 38, pars. 19—3, 19—1(a)) and was sentenced to concurrent terms of 10 years' and seven years' imprisonment, respectively. Defendant appeals from the judgment of the circuit court of Adams County. We affirm.

Defendant raises two issues on appeal: (1) whether the police had probable cause to arrest him so the trial court properly denied a mo-

tion to quash his arrest and suppress evidence; and (2) whether the trial court abused its discretion in sentencing and punished him for exercising his right to a jury trial by considering its belief that he committed perjury at trial.

We first consider the trial court's ruling on the motion to suppress, referring to the facts as necessary to the disposition. At about 7 p.m., on October 31, 1983, Paul Long parked his truck in the lot at the Travel Lodge Motel and walked toward its restaurant. He passed a 10-speed bike beside a tractor-trailer parked on the lot. On the other side of the trailer he saw a Buick Regal car with a broken window, a rock lying on the ground, and a man in the car going through the glove box. The man stood as he exited the car. Long called police, describing the man as a white male, six feet to six feet two inches tall, weighing about 165 pounds. When police arrived, the man and the 10-speed bike were gone. Quincy police officer Ronald Grant transmitted a description of the suspect as a white male, approximately 170 to 180 pounds, about six feet tall, riding a 10-speed bike. About 20 minutes later he received a call from Quincy auxiliary police officer Roberts and civil defense officer Frank at 10th and Maine.

At the hearing on the motion to suppress on December 27, 1983, officers Roberts and Frank testified they came into contact with defendant because of the car burglary suspect description. The officers said it was very cold that night, and defendant was the only person they saw riding a bicycle. They noted his intoxicated condition. Officer Roberts said that when he approached defendant, who was in a sitting position, he asked defendant to remove a screwdriver visible in his rear pocket and lay it on the planter next to him. Roberts said he did this for self-protection, as the screwdriver could be a weapon.

Officer Grant testified that when called to the scene by the officers, he talked to defendant for 10 minutes or less, and advised him he was extremely intoxicated and could be arrested for riding his bike in the street, referencing Illinois DUI law (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a)(2)), or for walking in the street, referencing section 11—1010 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1983, ch. 95½, par. 11—1010). Grant said defendant had a strong odor of alcoholic beverages on his breath, his balance was poor, and his speech was slurred. Defendant thereafter rode his bicycle on the sidewalk to 11th Street, got off the bike and walked it across the intersection between 10th and 11th streets, and got back on the bike on the other side of the intersection and again rode on the sidewalk. Grant said he was aware at the time that he could have arrested defendant for riding his bike on the sidewalk. Grant drove his squad

car down the street, pulled into a drive about half a block in front of defendant, who had crossed 11th Street, and stopped. Defendant rode down the sidewalk and ran into the side of the squad car. Grant then arrested defendant for violation of section 11—1010 of the Code and searched him on the street. The search disclosed a knife, a screwdriver, and the proceeds of a burglary, and led to the instant charges.

The court found probable cause existed at the time of the arrest, stating that when an officer who has probable cause to arrest for an offense mistakenly arrests an individual for another offense, it does not invalidate the lawfulness of a search carried out. The court believed the officer had probable cause to arrest defendant for operating a bicycle while intoxicated under section 11—501(a)(2) of the Code (DUI). The judge said the fact that the officer did not choose to advise defendant he was being arrested for DUI, but for unlawful pedestrian use of a roadway, was not dispositive, as the officer's observation would have been sufficient to charge the specific offense of DUI. The judge found no evidence that defendant was violating the statute cited by the officer, and noted that the law does not say an intoxicated person cannot use a sidewalk, of which a crosswalk is an extension. The court upheld the arrest and search on the basis that probable cause existed for one or more other offenses.

On December 30, 1983, defendant filed a motion to reconsider. On January 5, 1984, the court heard evidence and argument on the motion. Officer Grant testified that prior to arresting defendant under section 11—1010, he had noted that defendant was riding the bike without a headlight. At the time of the arrest, the city ordinance prohibited operation of a bicycle on a sidewalk in the business district, and both the ordinance and the Code required use of a headlight on a bicycle operated at night.

The court affirmed its previous determination that probable cause existed, and found that the officer continued to have probable cause to arrest the defendant for an offense even if different from that articulated.

On appeal defendant argues that he could not, under the law submitted, be guilty of either illegal pedestrian use of the roadway or DUI, that the arresting officer was without probable cause as to either offense, and that his arrest was invalid and the trial court erred in denying his motion to suppress.

■ The standards applicable to probable cause determinations are well established and have been stated in *People v. Robinson* (1976), 62 Ill. 2d 273, 276-77, 342 N.E.2d 356, 358:

"There is probable cause [to arrest] when the facts and circum-

stances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. (*People v. McCrimmon*, 37 Ill. 2d 40, 43.) This court observed in *People v. Jones*, 31 Ill. 2d 42, 47, that '\*\*\* reasonable cause means something less than evidence which would result in a conviction, and it is also established that reasonable cause may be founded upon evidence that would not be admissible at trial.'

In considering whether probable cause existed, we stated in *People v. Clay*, 55 Ill. 2d 501, 504-05, 'Whether or not probable cause for an arrest exists in a particular case depends upon the totality of the facts and circumstances known to the officers when the arrest was made. [Citations.] In deciding the question of probable cause in a particular case the courts deal with probabilities and are not disposed to be unduly technical. These probabilities are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act. *Draper v. United States*, 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; *People v. Fiorito*, 19 Ill. 2d 246.' Also it is proper to recognize in judging whether there was probable cause that '[p]olice officers often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals.' *People v. Watkins*, 19 Ill. 2d 11, 19."

In *People v. Watkins* (1960), 19 Ill. 2d 11, 19, 166 N.E.2d 433, 437, the court stated that a search incident to arrest is authorized when reasonably necessary to protect the arresting officer from attack. (See Ill. Rev. Stat. 1983, ch. 38, par. 108—1.) We note the court further remarked that minor traffic offenses do not all, of themselves, raise the kind of inferences which justify searches in other cases. In *People v. Moody* (1983), 94 Ill. 2d 1, 10, 445 N.E.2d 275, 279, the court stated:

"The fourth amendment and the exclusionary rule guard against *unreasonable searches and seizures,* not against unreasonable beliefs *per se.* If, as explained in *Brinegar v. United States* [*Brinegar v. United States* (1949), 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302], an arrest is to be termed 'reasonable' if a reasonable man in the arresting officer's position would believe that the defendant had committed a crime, we do not understand how the fact that the officer himself did not so believe, or was uncertain as to what to believe, can change

that. (See *Klingler v. United States* (8th Cir. 1969), 409 F.2d 299, 304, *cert. denied* (1969), 396 U.S. 859, 24 L. Ed. 2d 110, 90 S. Ct. 127.) The inquiry must focus on what was done and known by the police, not on what was believed, what the facts objectively viewed add up to, not what the officer on the scene believed they added up to. The latter approach would, of course, lead to differing conclusions based upon the experiences and response of a particular officer, while the former approach leads to the more uniform answer expected of the law."

Also pertinent to the inquiry here, the court in *People v. Kincy* (1982), 106 Ill. App. 3d 250, 254, 435 N.E.2d 831, 834-35, cited by the State, stated:

"The test for determining the validity of the arrest is whether the officer had actual probable cause to arrest the defendant, not whether the officer articulated the correct basis for the arrest. (*United States v. Lester* (8th Cir. 1981), 647 F.2d 869, 873; *United States v. Dunavan* (6th Cir. 1973), 485 F.2d 201, 205; *United States v. Saunders* (5th Cir. 1973), 476 F.2d 5, 7; *United States v. Carr* (D. Conn. 1978), 445 F. Supp. 1383, 1387, *aff'd* (2d Cir. 1978), 584 F. 2d 612, *cert. denied* (1979), 440 U.S. 935, 59 L. Ed. 2d 494, 99 S. Ct. 1280.) We agree that when an officer makes an arrest which is properly supported by probable cause to arrest for a certain offense neither his subjective reliance on an offense for which there is no probable cause, nor his verbal announcement of the wrong offense vitiates the arrest. (*United States v. Saunders* (5th Cir. 1973), 476 F. 2d 5, 7; see also *People v. Moody* (1981), 97 Ill. App. 3d 758, 766.) Therefore, if there was actual probable cause to arrest the defendant for aggravated assault, the arrest was valid regardless of the officer's stated basis for the arrest."

We agree that this is the analysis to be applied to probable cause determinations.

Further, a trial court's decision on a motion to suppress is presumptively correct and should not be disturbed unless it is manifestly erroneous. (*People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280; *People v. Klein* (1983), 115 Ill. App. 3d 582, 586, 450 N.E.2d 1268, 1271.) In *Illinois v. Gates* (1983), 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332, the United States Supreme Court stated that the task on review is simply to ensure that the trial court had a substantial basis for concluding that probable cause existed. (See *People v. Tisler* (1984), 103 Ill. 2d 226, 248, 469 N.E.2d 147, 158, citing *Gates*.) The burden is on the defendant to establish

the illegality of arrest when he seeks to use the illegality as a basis for suppression of evidence. *People v. Petersen* (1982), 110 Ill. App. 3d 647, 654, 442 N.E.2d 941, 947.

■ We do not believe that defendant met this burden, and consistent with *Robinson, Moody,* and *Kincy*, we hold that the trial court properly denied the motion to suppress. We find, first, that the arresting officer acted reasonably in arresting defendant and had probable cause to do so and to search within the meaning of sections 107—2(c) and 108—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, pars. 107—2(c), 108—1), irrespective of whether defendant could be convicted under section 11—1010 of the Code or of DUI. The United States Supreme Court remarked in *Michigan v. DeFillippo* (1979), 443 U.S. 31, 36, 61 L. Ed. 2d 343, 349, 99 S. Ct. 2627, 2631:

> "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest. We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest. [Citations.]"

Second, the officer observed defendant's ordinance violations, to wit: riding a bicycle on a sidewalk in the business district, and riding it at night without a headlight (also in violation of section 11—1507(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—1507(a))). The arresting officer testified that such violators would be booked if unable to make bond at the station, or that a valid driver's license could be accepted. Defendant did not testify in support of the motion. Thus the evidence justified a pat-down conducted preliminary to putting defendant in the squad car and directed toward protection of the officer. (See 2 W. LaFave, Search & Seizure sec. 5.2(e), at 281-87 (1978).) Moreover, when police are acting together, the knowledge of each is the knowledge of all (*People v. Hobson* (1983), 117 Ill. App. 3d 191, 202, 452 N.E.2d 771, 779), and here another officer had already sought removal of a visible screwdriver from defendant's person. Therefore, the pat-down, which revealed a knife and another screwdriver in addition to the burglary proceeds, could properly be conducted in investigating after defendant ran his bike into the squad car. Third, the officers had reason to conduct a pat-down search when investigating defendant as to the burglary (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868), and the fact that they did not do so at the earliest time does not render the search invalid or

require suppression of the evidence.

Defendant cites *People v. Nash* (1979), 78 Ill. App. 3d 172, 397 N.E.2d 480. The conduct of the police and the basis for the arrest of the defendant in *Nash* are dissimilar from the instant case. The grounds for the arrest in this case were not merely discovered in retrospect; rather, alternate grounds were interrelated and occurred contemporaneously with the grounds stated by the officer, and were known to the officer at the time of the arrest, although unannounced and unarticulated. Likewise, defendant's citation of *People v. Johnson* (1973), 14 Ill. App. 3d 254, 302 N.E.2d 430, which involved the search of passengers of an auto involved in a minor traffic offense, is of no help in the instant case.

■ Defendant next contends that the trial court abused its discretion in sentencing and punished him for exercising his right to a jury trial by considering its belief that he committed perjury at trial. The State argues that since defendant failed to object to the trial court's remarks in sentencing the issue has been waived. We agree. The waiver rule applies to constitutional questions as well as to other issues. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857.) Moreover, we would reject defendant's argument on the merits.

At the sentencing hearing, in informing defendant of his right of allocution, the court indicated it was bothered by certain matters in the presentencing report, to which no corrections were offered. Defendant declined to exercise his right of allocution. In pronouncing sentence the court remarked on defendant's version of the occurrence as shown in the presentencing report:

> "Mr. Corrigan stated, 'I was intoxicated when I did it, so I don't remember everything I did. The reason I went and broke into his house was because I believed he had a large quantity of marijuana there and I couldn't find it in his house, so I went to his car and broke into it and that's when they arrested me.' "

The court commented that it believed defendant had perjured himself at trial.

Defendant cites *People v. Sivels* (1975), 60 Ill. 2d 102, 324 N.E.2d 422 (sentences not imposed because defendant asked for jury trial; affirmed), and *People v. Moriarty* (1962), 25 Ill. 2d 565, 185 N.E.2d 688 (punishment imposed in part because defendant availed himself of jury trial; reversed and remanded), which state that a defendant in a criminal case may not be punished by heavy sentence merely because he exercises his constitutional right to be tried before an impartial judge or jury. The remarks of the judge in *Moriarty*, which led to reversal, appear to be these:

" 'Well, you're going to pay the penalty for it after a fashion. If you'd have come in here, as you should have done in the first instance, to save the State the trouble of calling a jury, I would probably have sentenced you, as I indicated to you I would have sentenced you, to one to life in the penitentiary. It will cost you nine years additional, because the sentence now is ten to life in the penitentiary.' " (25 Ill. 2d 565, 567, 185 N.E.2d 688.)

*Moriarty* also noted that in *People v. Capon* (1961), 23 Ill. 2d 254, 257, 178 N.E.2d 296, 297-98, the court had refused to disturb a sentence despite inappropriate remarks by the trial court at the time of imposing punishment.

■■ ■ It is within the authority of the trial court to consider defendant's perceived perjury at trial when sentencing him. (See *United States v. Grayson* (1978), 438 U.S. 41, 57 L. Ed. 2d 582, 98 S. Ct. 2610; *People v. Meeks* (1980), 81 Ill. 2d 524, 536, 411 N.E.2d 9, 15; and *People v. Oravis* (1980), 81 Ill. App. 3d 717, 719, 402 N.E.2d 297, 299.) The judge's remarks concerning defendant's use of jury trial could therefore be treated as an additional factor for imposing sentence. The trial judge did, in his statements prior to sentencing, mention the abuse of the right of jury trial, but the statement was in the context that the abuse was the untruthfulness of the defendant. The court clearly indicated to the defendant the reasons for the sentence imposed. A review of the trial judge's comments in this case reflect they were within the authority of *Grayson, Meeks* and *Oravis*, and that the trial judge did not punish defendant in sentencing solely, or in part, because he exercised his right to jury trial within the meaning of *Moriarty*. Moreover, other evidence in aggravation was entirely sufficient to justify the sentence imposed.

Defendant argues his statements to the probation office should not be admissible against him unless he had been given *Miranda* warnings. We note *Miranda* warnings are not required when a defendant is interviewed in connection with a routine presentence report. *People v. Bachman* (1984), 127 Ill. App. 3d 179, 184-85, 468 N.E.2d 817, 822.

Affirmed.

GREEN, P.J., and MILLS, J., concur.