THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HOWARD J. HILLIER, Defendant-Appellant.

Third District   No. 3—07—0717

Opinion filed June 16, 2009.

McDADE, J., dissenting.

Jay Wiegman, of State Appellate Defender's Office, of Ottawa, for appellant.

John T. Pepmeyer, State's Attorney, of Galesburg (Terry A. Mertel and Dawn D. Duffy, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

Defendant, Howard Hillier, was charged with predatory criminal sexual assault of a child (720 ILCS 5/12—14.1(a)(1) (West 2006)). The trial court found defendant guilty. Before sentencing, the trial court ordered defendant to participate in a sex offender evaluation. The trial court sentenced defendant to 20 years in prison based, in part, on the results of the sex offender evaluation. On appeal, defendant asks that (1) his conviction be reversed because the evidence was insufficient to prove him guilty of predatory criminal sexual assault of a child, and (2) his sentence be vacated because the trial court violated Illinois law and his fifth amendment rights by compelling him to submit to a sex offender evaluation. We affirm.

On June 28, 2006, defendant was charged by information with predatory criminal sexual assault of a child "in that from on or about February 15, 1998, to February 14, 2000, the said defendant, who was 17 years or older, committed an act of sexual penetration with J.L.J., who was under 13 years of age when the act was committed, in that the defendant placed his finger in the vagina of J.L.J. in violation of 720 ILCS 5/12—14.1(a)(1)."

A bench trial was held on December 19 and 20, 2006. At defendant's trial, J.L.J. testified that she was born in 1991. Defendant was her stepfather and "sexually abused" her for two years from approximately 1998 to 2000. The abuse began when J.L.J. was seven or eight years old. According to J.L.J., defendant "put his hands down my pants and he fondled my breasts." The prosecutor asked J.L.J. the following questions and received the following responses from J.L.J.:

"Q. Did he ever do anything else to you? Did he touch you in any way or place his finger anywhere?

A. Yes.

Q. Where did he place his finger?

A. My vagina."

Defendant testified that he used to be married to J.L.J.'s mother. He denied ever "placing [his] finger inside J.L.J.'s vagina" or "fondling her breasts."

The trial court ruled that "the State proved its case beyond a reasonable doubt" and found defendant guilty of predatory criminal sexual assault of a child. The trial court directed the probation office to prepare a presentence investigation.

The State then filed a motion for a sex offender evaluation. The trial court granted the motion and entered an order requiring defendant to undergo a sex offender evaluation. In its order, the court stated: "That it was the intention of the Court, at the time the Defendant was found guilty of the offense in the above captioned case, to order a sex offender evaluation as well as a pre-sentence investigation."

Defendant underwent a sex offender evaluation, which was conducted by a clinical social worker at a mental health facility. During the evaluation, defendant denied sexually abusing J.L.J. As part of the evaluation, the social worker assessed defendant's risk to reoffend using STATIC 99, "an instrument designed to assist in the prediction of sexual and violent recidivism for sexual offenders." The results of that assessment were as follows:

"Mr. Hillier scored a 6 on this risk assessment. Individuals with these characteristics, on average sexually reoffend at 39% over five years, 45% over 10 years and 52% over 15 years. The rate for any violent recidivism (including sexual) for individuals with these characteristics is, on average, 44% over 5 years, 51% over 10 years and 59% over 15 years.

Based on the STATIC 99 score this places Mr. Hillier in the high category or between the top 12% risk category relative to other male sex offenders."

At defendant's sentencing hearing, the trial court took into consideration the results of defendant's sex offender evaluation. The court explained: "This might be an entirely different situation had that assessment come back and said that you are not at risk of re-offending but this, in fact, indicated that you were a higher risk of re-offending because of everything contained within that statement." The trial court sentenced defendant to 20 years in prison.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that he was not proven guilty beyond a reason-

able doubt of predatory criminal sexual assault of a child because J.L.J. never testified that he placed his finger inside her vagina.

A defendant is guilty of predatory criminal assault of a child if he "was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed." 720 ILCS 5/12—14.1(a)(1) (West 2006). " 'Sexual penetration' means *** any intrusion, however slight, of any part of the body of one person *** into the sex organ or anus of another person." 720 ILCS 5/12—12(f) (West 2006). When a defendant challenges the sufficiency of the evidence, the appropriate standard of review is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Bell*, 234 Ill. App. 3d 631, 635-36, 600 N.E.2d 902, 906 (1992). Whether sexual penetration occurred is a question of fact to be determined by the trier of fact. *People v. Herring*, 324 Ill. App. 3d 458, 464, 754 N.E.2d 385, 390 (2001); *Bell*, 234 Ill. App. 3d at 636, 600 N.E.2d at 906.

It is the function of the trier of fact to determine credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. *Herring*, 324 Ill. App. 3d at 464, 754 N.E.2d at 390. The trier of fact is entitled to draw all reasonable inferences from both circumstantial and direct evidence, including an inference of penetration. *Herring*, 324 Ill. App. 3d at 465, 754 N.E.2d at 391. A jury may reasonably infer that an act of penetration occurred based on testimony that the defendant "rubbed," "felt" or "handled" the victim's vagina. *Bell*, 234 Ill. App. 3d at 636-67, 600 N.E.2d at 906-07. Such an inference is unreasonable only if the victim denies that penetration occurred. See *Bell*, 234 Ill. App. 3d at 637, 600 N.E.2d at 907.

■ Here, there was sufficient evidence presented to establish that defendant sexually penetrated J.L.J. When J.L.J. was asked where defendant "placed his finger," she responded, "my vagina." J.L.J. never denied that defendant penetrated her. Based on J.L.J.'s statement, the trial court could have reasonably inferred that defendant penetrated J.L.J.'s vagina with his finger. See *Bell*, 234 Ill. App. 3d at 636-67, 600 N.E.2d at 906-07. Thus, defendant was proven guilty beyond a reasonable doubt of predatory criminal sexual assault of J.L.J.

## II. STATUTORY AND FIFTH AMENDMENT CLAIMS

Defendant also argues that his sentence should be vacated because the trial court violated state law, as well as his fifth amendment rights, when it ordered him to participate in a sex offender evaluation.

## A. Statutory Claim

■ In Illinois, a presentence report must be completed in all felony cases, which sets forth certain information about the defendant. See 730 ILCS 5/5—3—2 (West 2006). When a felony sex offender is being considered for probation, he is required to submit to a sex offender evaluation as part of the presentence investigation. 20 ILCS 4026/16 (West 2006); 730 ILCS 5/5—3—2(b—5) (West 2006). A sex offender evaluation must include an assessment of the defendant's risk of re-offending, which is to be evaluated by a "validated risk instrument that is generally accepted by sex offender evaluators," such as "STATIC 99." 20 Ill. Adm. Code §§1905.240(k)(5), (k)(7).

■ Here, defendant was convicted of predatory criminal sexual assault of a child, a nonprobationary Class X felony. See 720 ILCS 5/12—14.1(b)(1) (West 2006); 730 ILCS 5/5—5—3(c)(2)(c) (West 2006). Nevertheless, the trial court ordered defendant to undergo a sex offender evaluation. Based on defendant's STATIC 99 score, defendant fell in the "high category" of recidivism. The trial court considered the results of the evaluation when sentencing defendant.

Defendant contends that the trial court should not have ordered him to submit to a sex offender evaluation because he was not eligible for probation. There is no requirement for a sex offender who is not eligible for probation to submit to a sex offender evaluation. However, the statute does not prohibit a trial court from ordering a sex offender evaluation for a defendant who is not eligible for probation. In fact, the statute specifically allows the trial court to order supplementary information to be included in the report. See 730 ILCS 5/5—3—2(a)(6), (b) (West 2006). We see no reason to disallow a sex offender evaluation in nonprobationary cases if the trial court deems it helpful in sentencing a defendant. The trial court did not err in requiring defendant to submit to the sex offender evaluation.

## B. Fifth Amendment Claim

The fifth amendment to the United States Constitution provides that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. This prohibition permits an individual " 'not to answer official questions put to him in any *** proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.' " *Minnesota v. Murphy*, 465 U.S. 420, 426, 79 L. Ed. 2d 409, 418, 104 S. Ct. 1136, 1141 (1984), quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 38 L. Ed. 2d 274, 281, 94 S. Ct. 316, 322 (1984). The fifth amendment privilege extends to sentencing proceedings. *Mitchell v. United States*, 526 U.S. 314, 325, 143 L. Ed. 2d 424, 435, 119 S. Ct. 1307, 1313-14 (1999).

The fifth amendment speaks of compulsion; it does not preclude a witness from testifying voluntarily in matters that may incriminate him. *Murphy*, 465 U.S. at 427, 79 L. Ed. 2d at 419, 104 S. Ct. at 1142. Therefore, if a witness desires the protection of the privilege, he must claim it or he will not be considered to have been "compelled" within the meaning of the amendment. *Murphy*, 465 U.S. at 427, 79 L. Ed. 2d at 419, 104 S. Ct. at 1142. An exception to the general rule exists when the witness is interrogated while held in police custody, *Murphy*, 465 at 430, 79 L. Ed. 2d at 421, 104 S. Ct. at 1143. When in police custody, a defendant must be notified of his fifth amendment right to remain silent and his right to the presence of an attorney before being questioned. *Miranda v. Arizona*, 384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 706-07, 86 S. Ct. 1602, 1612 (1966).

*Miranda* warnings are necessary when police officers are interrogating defendants who are in custody because officers are " 'acutely aware of the potentially incriminating nature of the disclosures sought' " and the custodial setting contains " 'inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' " *Murphy*, 465 U.S. at 429-30, 79 L. Ed. 2d at 421, 104 S. Ct. at 1143, quoting *Garner v. United States*, 424 U.S. 648, 657, 47 L. Ed. 2d 370, 379, 96 S. Ct. 1178, 1184 (1976), and quoting *Miranda*, 389 U.S. at 467, 16 L. Ed. 2d at 719, 86 S. Ct. at 1624. The Supreme Court has consistently held that *Miranda* " 'does not apply outside the context of the inherently coercive custodial interrogations for which it was designed.' " *Murphy*, 465 U.S. at 430, 79 L. Ed. 2d at 421, 104 S. Ct. at 1143-44, quoting *Roberts v. United States*, 445 U.S. 552, 560, 63 L. Ed. 2d 622, 630-31, 100 S. Ct. 1358, 1364 (1980).

Defendant argues that he was entitled to *Miranda* warnings prior to the sex offender evaluation. In support thereof, he cites *Estelle v. Smith*, 451 U.S. 454, 68 L. Ed. 2d 359, 101 S. Ct. 1866 (1981). In *Estelle*, the defendant underwent a compelled pretrial psychiatric evaluation to determine if he was fit to stand trial. The State relied on statements the defendant made during that evaluation to establish his future dangerousness at the penalty phase of his capital trial. The Supreme Court held that the defendant's statements could not be used for that purpose because the defendant was not advised before the evaluation that he had a right to remain silent and that any statement he made could be used against him at sentencing. *Estelle*, 451 U.S. at 467-68, 68 L. Ed. 2d at 371, 101 S. Ct. at 1875-76.

In *Estelle*, the Supreme Court substantially limited its holding to the facts of that case, stating: "we do not hold that the same Fifth Amendment concerns are necessarily presented by all types of

interviews and examinations that might be ordered or relied upon to inform a sentencing determination." *Estelle*, 451 U.S. at 469 n.13, 68 L. Ed. 2d at 373 n.13, 101 S. Ct. at 1876 n.13. Relying on the above-quoted language, the court in *Baumann v. United States*, 692 F.2d 565, 576 (9th Cir. 1982), held that *Estelle* did not require that a convicted defendant receive *Miranda* warnings prior to submitting to a presentence interview. The court explained:

"[T]here is a substantial difference between a psychiatric examination of the defendant in a capital case which seeks to elicit evidence from the defendant relating to the critical aggravating factor of dangerousness, and a 'routine' presentence interview [citation], restricted to gathering information upon which the district court, in its discretion, may rely when imposing sentence. As we read *Estelle*, the Court's fifth amendment holding is limited to the distinct circumstances of the bifurcated capital proceedings presented in that case." *Baumann*, 692 F.2d at 576.

Since the *Baumann* decision, several courts have agreed that *Miranda* warnings are not required to be given prior to presentence interviews. See *United States v. Rogers*, 921 F.2d 975 (10th Cir. 1990); *United States v. Miller*, 910 F.2d 1321 (6th Cir. 1990); *United States v. Cortes*, 922 F.2d 123 (2d Cir. 1990); *People v. Corrigan*, 129 Ill. App. 3d 787, 473 N.E.2d 140 (1985); *People v. Bachman*, 127 Ill. App. 3d 179, 468 N.E.2d 817 (1984). In *Cortes*, the court explained that the pretrial psychological evaluation in *Estelle* was readily distinguishable from a presentence interview because the defendant in *Estelle* was ordered to submit to an interrogation for one purpose and did not know that the prosecution would subsequently use the information against him for an entirely different purpose. See *Cortes*, 922 F.2d at 126-27. A defendant participating in a presentence interview, on the other hand, knows that the information he provides will be used in sentencing and may have an adverse effect on his sentence. *Cortes*, 922 F.2d at 126-27. See also *Rogers*, 921 F.2d at 981 (found psychological examination in *Estelle* distinguishable from a postconviction presentence interview because the examination in *Estelle* occurred before defendant's trial, and the information obtained in that evaluation "was used by the government to carry its burden of proof at the penalty phase of a capital murder trial").

In the same vein, courts have ruled that a defendant need not be provided *Miranda* warnings before being required to submit to a presentence psychosexual evaluation. In *Dzul v. State*, 118 Nev. 681, 687, 56 P.3d 875, 879 (2002), the Nevada Supreme Court considered whether a defendant was entitled to *Miranda* warnings before psychosexual interviews. The defendant in *Dzul* cited *Estelle* in sup-

port of his position that he was entitled to *Miranda* warnings. *Dzul*, 118 Nev. at 685, 56 P.3d at 878. The court found *Estelle* distinguishable because the defendant in *Dzul* was interviewed after he was convicted and was informed in advance that the psychosexual evaluation was for the purpose of determining his sentence. *Dzul*, 118 Nev. at 686; 56 P.3d at 878. The court also noted that "Dzul had the assistance of counsel throughout the proceedings, never invoked his right against self-incrimination, and does not dispute that he was *Mirandized* when he first spoke with police during their investigation in this case." *Dzul*, 118 Nev. at 686, 56 P.3d at 878-89. The court concluded that the State did not violate Dzul's constitutional rights. *Dzul*, 118 Nev. at 687, 56 P.3d at 879. See also *State v. Curless*, 137 Idaho 138, 144-45, 44 P.3d 1193, 1199-1200 (App. 2002) (no *Miranda* warnings required prior to a postconviction psychosexual evaluation because it is more akin to a presentence interview than the pretrial competency evaluation in *Estelle*).

We find these cases persuasive. Unlike the defendant in *Estelle* who was required to undergo a pretrial competency evaluation, defendant here was ordered to participate in the evaluation after he was convicted. Additionally, defendant was informed of the purpose of the evaluation, and the evaluation was used solely for that purpose. Thus, *Estelle* is distinguishable and not controlling here; defendant was not entitled to *Miranda* warnings prior to being compelled to participate in the court-ordered sex offender evaluation.

When defendants are not entitled to *Miranda* warnings, they must either claim the fifth amendment privilege or they waive it. See *Murphy*, 465 U.S. at 427, 79 L. Ed. 2d at 419, 104 S. Ct. at 1142. Here, since defendant never asserted his fifth amendment privilege, he was not entitled to its protections, and his claim must fail.

## CONCLUSION

The judgment of the circuit court of Knox County is affirmed.

Affirmed.

SCHMIDT, J., concurs.

JUSTICE McDADE, dissenting:

The majority has found that the State proved defendant guilty of predatory criminal sexual assault of a child beyond a reasonable doubt (392 Ill. App. 3d at 69), that the trial court did not violate defendant's state rights by ordering him to complete a sex offender evaluation which it "considered *** when sentencing defendant" (392 Ill. App. 3d

at 70), and, finally, that the trial court did not violate defendant's fifth amendment rights by compelling him to complete the sex offender evaluation and using the results to sentence him (392 Ill. App. 3d at 73). The majority based its final judgment on the rule that "[w]hen defendants are not entitled to *Miranda* warnings, they must either claim the fifth amendment privilege or they waive it" (392 Ill. App. 3d at 73), and, here, defendant was not entitled to *Miranda* warnings (392 Ill. App. 3d at 73) and did not claim his fifth amendment privilege. I concur with the majority's judgment that the State proved defendant guilty of predatory criminal sexual assault of a child beyond a reasonable doubt. I disagree with the majority's judgment that the trial court did not violate defendant's state and constitutional rights. I dissent from that portion of the judgment affirming defendant's sentence.

The majority acknowledges that "[t]here is no requirement for a sex offender who is not eligible for probation to submit to a sex offender evaluation" (392 Ill. App. 3d at 70) but concluded that the trial court did not violate defendant's rights in requiring him to do so because "the statute does not *prohibit* a trial court from ordering a sex offender evaluation for a defendant who is not eligible for probation" (emphasis added) (392 Ill. App. 3d at 70). The majority concludes that the trial court did not violate defendant's state rights because sections 5—3—2(a)(6) and 5—3—2(b) of the Unified Code of Corrections "allow[ ] the trial court to order supplementary information to be included in the [presentence] report" (392 Ill. App. 3d at 70) and that no reason exists "to disallow a sex offender evaluation in nonprobationary cases if the trial court deems it helpful in sentencing a defendant" (392 Ill. App. 3d at 70). Section 5—3—2(a)(6) reads as follows: "(a) In felony cases, the presentence report shall set forth: *** (6) any other matters *** the court directs to be included." 730 ILCS 5/5—3—2(a)(6) (West 2006). Section 5—3—2(b) reads, in pertinent part, as follows:

> "(b) The investigation shall include a physical and mental examination of the defendant when so ordered by the court. If the court determines that such an examination should be made, it shall issue an order that the defendant submit to examination at such time and place as designated by the court and that such examination be conducted by a physician, psychologist or psychiatrist designated by the court." 730 ILCS 5/5—3—2(b) (West 2006).

There are, in fact, two reasons to disallow a sex offender evaluation in nonprobationary cases, regardless of whether the trial court deems it helpful in sentencing a defendant. First, the trial court has no direct authority to order the testing. The majority recognizes this

fact when it finds that nothing in the Code prohibits the trial court's order but fails to find an express grant of authority for the trial court's order. What the majority fails to acknowledge is that an order entered without authority is void.

The supreme court, in construing section 5—5—3 of the Code, has expressly held that "[a] sentence not authorized by statute is void." *People v. Williams*, 179 Ill. 2d 331, 336, 688 N.E.2d 1153, 1155 (1997). Despite the provision in section 5—3—2(a)(6) for "any other matters *** the court directs to be included" in the presentence report, that provision in section 5—3—2(a)(6) is not broad enough to encompass a sex offender evaluation under well-established rules of statutory construction.

The rule of statutory construction that I believe contradicts the majority's judgment that section 5—3—2(a)(6) permits the trial court to order a sex offender evaluation in a nonprobationary case, simply because it deems it helpful in sentencing the defendant, is the rule, which our supreme court has found to be "axiomatic[,] that specific statutory provisions generally control over general provisions on the same subject." *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 63, 697 N.E.2d 699, 716 (1998). The rule that "[w]here two statutory provisions cover the same subject matter, the more specific statute governs" (*Huskey v. Board of Managers of Condominiums of Edelweiss, Inc.*, 297 Ill. App. 3d 292, 295, 696 N.E.2d 753, 755 (1998)), applies where different sections of the same statute "provide for a different procedure" covering the same subject matter (*Huskey*, 297 Ill. App. 3d at 295, 696 N.E.2d at 755). Additionally, in interpreting written instruments, we follow the principle that "it is the better rule that the intention should be given full effect which appears in the more principal and specific clause, and that the general clause should be subjected to such modification or qualification as the specific clause makes necessary." *Heifner v. Board of Education of Morris Community High School District No. 101, Grundy County*, 32 Ill. App. 3d 83, 88, 335 N.E.2d 600, 604 (1975).

Section 5—3—2(b)—5) of the Code, which defendant relies on to argue that the trial court exceeded its authority, reads as follows:

> "In cases involving felony sex offenses in which the offender is being considered for probation or any felony offense that is sexually motivated as defined in the Sex Offender Management Board Act in which the offender is being considered for probation, the investigation shall include a sex offender evaluation by an evaluator approved by the Board and conducted in conformance with the standards developed under the Sex Offender Management Board Act." 730 ILCS 5/5—3—2(b)—5) (West 2006).

Section 5—3—2(b—5) is a specific grant of authority in limited situations to order a defendant to submit to a sex offender evaluation and controls over any general grant of authority in section 5—3—2(a)(6) to order "other matters" to be included in a presentence report. Section 5—3—2(b—5) is also more specific in addressing sex offender evaluations than the general authority to order a "mental examination" under section 5—3—2(b). Under the controlling provision of the Code, the trial court may only order a sex offender evaluation when "the offender is being considered for probation" (730 ILCS 5/5—3—2(b—5) (West 2006)). The trial court lacked any authority to order defendant to submit to a sex offender evaluation. Its order is, therefore, void. Accordingly, I would reverse the trial court's order that defendant submit to a sex offender evaluation and remand for new sentencing proceedings in which the trial court did not use the results of the examination in sentencing defendant.

The second reason to disallow the trial court's actions in this case is that the trial court effectively used the results of the sex offender evaluation to impose a harsher sentence on defendant without requiring the State to prove those results beyond a reasonable doubt. Doing so, the trial court violated defendant's sixth and fourteenth amendment rights as described by the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 476-77, 147 L. Ed. 2d 435, 447, 120 S. Ct. 2348, 2355-56 (2000). The court violated defendant's rights even though it sentenced him within the applicable statutory range. The Illinois Supreme Court has recognized that *"Apprendi* '*** requires the State to prove to the jury beyond a reasonable doubt *all facts underlying the sentence imposed* on the defendant.' (Emphasis added.) [Citation.]" *People v. Green*, 225 Ill. 2d 612, 621, 870 N.E.2d 394, 400 (2007), quoting *Hill v. Cowan*, 202 Ill. 2d 151, 158, 781 N.E.2d 1065 (2002). The Illinois Supreme Court interpreted *Apprendi* to hold that the rights[ ] addressed in *Apprendi* "extend[ ] to all facts necessary to establish the range of penalties potentially applicable to the defendant." *Cowan*, 202 Ill. 2d at 154, 781 N.E.2d at 1067.

Here, in sentencing defendant, the trial court stated as follows:

"This might be an entirely different situation had that assessment come back and said that you are not at risk of reoffending but this, in fact, indicated that you were a higher risk of reoffending because of everything contained within that statement."

This court should be left with no doubt the trial court relied heavily on defendant's sex offender evaluation in fashioning his sentence and that the results of that evaluation resulted in a harsher sentence against him. Because the trial court relied on facts not proved beyond a reasonable doubt to subject defendant to a harsher sentence, I would

find that the court violated his constitutional rights. Accordingly, I would reverse his sentence and remand for a new sentencing hearing.

Regardless of my findings that the trial court both exceeded its statutory authority under Illinois law and violated defendant's federal constitutional rights, I dissent because I believe the majority's reasoning is flawed in that it misapplies the law with regard to the fifth amendment privilege against self-incrimination.

The majority finds that defendant forfeited his fifth amendment rights because "defendant was not entitled to *Miranda* warnings prior to being compelled to participate in the court-ordered sex offender evaluation" (392 Ill. App. 3d at 73) and defendant did not assert his fifth amendment privilege against self-incrimination. The basis of the majority's judgment that defendant's failure to assert the fifth amendment privilege in the trial court results in forfeiture of his fifth amendment rights is its misapplication of the rule, stated by the United States Supreme Court, that, absent a requirement for *Miranda* warnings, a defendant who " 'desires the protection of the [fifth amendment] privilege *** must claim it or he will not be considered to have been "compelled" within the meaning of the Amendment.' " *Minnesota v. Murphy*, 465 U.S. 420, 427, 79 L. Ed. 2d 409, 419, 104 S. Ct. 1136, 1142 (1984), quoting *United States v. Monia*, 317 U.S. 424, 427, 87 L. Ed. 376, 380, 63 S. Ct. 409, 410-11 (1943).

Initially, I note that, as previously discussed, the trial court's order that defendant submit to a sex offender evaluation lacked statutory authority and was void. "An argument that an order or judgment is void is not subject to waiver." *People v. Thompson*, 209 Ill. 2d 19, 27, 805 N.E.2d 1200, 1205 (2004). The majority misreads the Supreme Court's holding in *Murphy*. Although it did rely on the general proposition quoted above, the *Murphy* Court clarified that the issue is always whether the defendant has been "compelled," and that the fifth amendment " 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him ***.' [Citation.]" *Murphy*, 465 U.S. at 426, 79 L. Ed. 2d at 418, 104 S. Ct. at 1141, quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 38 L. Ed. 2d 274, 281, 94 S. Ct. 316, 322 (1973).

In *Murphy*, the Court found that the government had not "compelled" the defendant to answer incriminating questions because he was under only a general obligation to appear and answer questions truthfully. The Court found that such an obligation "did not in itself convert Murphy's otherwise voluntary statements into compelled ones." *Murphy*, 465 U.S. at 427, 79 L. Ed. 2d at 419, 104 S. Ct. at 1142. The Court further explained that a witness under a general

compulsion to testify and who answers incriminating questions has not been compelled to be a witness against himself if he answers a question which "both he and the government should reasonably expect to incriminate him." *Murphy*, 465 U.S. at 428, 79 L. Ed. 2d at 420, 104 S. Ct. at 1142.

Therefore, to the extent *Murphy* stands for the proposition that a failure to assert the privilege against self-incrimination results in the forfeiture of the privilege, it only goes so far as to hold that the privilege is forfeited when a reasonable person compelled to answer questions would expect his answers to incriminate him. See *Murphy*, 465 U.S. at 429 n.5, 79 L. Ed. 2d at 421 n.5, 104 S. Ct. at 1143 n.5 ("We emphasize that Murphy was not under arrest and that he was free to leave at the end of the meeting. A different question would be presented if he had been interviewed by his probation officer while being held in police custody or by the police themselves in a custodial setting").

The Court reached its conclusion because " '[the] Constitution does not forbid the asking of criminative [*sic*] questions.' [Citation.]" *Murphy*, 465 U.S. at 428, 79 L. Ed. 2d at 420, 104 S. Ct. at 1142, quoting *United States v. Monia*, 317 U.S. 424, 433, 87 L. Ed. 376, 382-83, 63 S. Ct. 409, 413 (1943) (Frankfurter, J., dissenting). Nonetheless, the Court made clear that even when the witness is only under a general compulsion to testify (not to answer specific questions) the court must still "ask *** whether the particular disclosure was 'compelled' within the meaning of the Fifth Amendment." *Murphy*, 465 U.S. at 428, 79 L. Ed. 2d at 420, 104 S. Ct. at 1143-43. Here, the majority concedes that the trial court ordered defendant to complete the sex offender evaluation and offers nothing to suggest that defendant could, at any time, refuse to cooperate in the evaluation. Although the majority states that "defendant was informed of the purpose of the evaluation, and the evaluation was used solely for that purpose" (392 Ill. App. 3d at 73), nothing suggests defendant knew the trial court would impose a harsher sentence based solely on the results of the evaluation and that he could refuse to participate. The trial court clearly believed, erroneously, that it had the authority to order the evaluation, and its statements at sentencing reveal that it imposed a harsher sentence based on the evaluation without informing defendant he could refuse to participate in violation of defendant's fifth amendment rights. Thus I find that the majority's fifth amendment analysis is fatally flawed and its purported reliance on *Murphy* totally misplaced.

Even were this court to read *Murphy* to stand broadly, as the majority mistakenly has, for the proposition that absent an indepen-

dent requirement that a defendant receive *Miranda* warnings, he "ordinarily must assert the privilege rather than answer if he desires not to incriminate himself" (*Murphy*, 465 U.S. at 429, 79 L. Ed. 2d at 420, 104 S. Ct. at 1143), the *Murphy* Court went on to hold that "application of this general rule is inappropriate in certain well-defined situations." *Murphy*, 465 U.S. at 429, 79 L. Ed. 2d at 420, 104 S. Ct. at 1143. Those situations include ones where "some identifiable factor 'was held to deny the individual a "free choice to admit, to deny, or to refuse to answer." ' [Citation.]" *Murphy*, 465 U.S. at 429, 79 L. Ed. 2d at 420, 104 S. Ct. at 1143, quoting *Garner v. United States*, 424 U.S. 648, 657, 47 L. Ed. 2d 370, 378-79, 96 S. Ct. 1178, 1183 (1976), quoting *Lisenba v. California*, 314 U.S. 219, 241, 86 L. Ed. 166, 182, 62 S. Ct. 280, 292 (1941).

The nature of the information and the manner in which the court obtained it present a situation which the Supreme Court has already found to deny the defendant the free choice to refuse to answer and one which can result in a violation of fifth amendment rights even when the defendant does not assert the fifth amendment privilege. In *Estelle v. Smith*, 451 U.S. 454, 461, 68 L. Ed. 2d 359, 368, 101 S. Ct. 1866, 1872 (1981), cited by defendant in the case at bar, the Supreme Court held that the admission of testimony concerning the results of a pretrial psychiatric evaluation at the penalty phase of the defendant's trial violated his fifth amendment privilege against compelled self-incrimination because the defendant was not advised before the examination that he had a right to remain silent and that any statement he made could be used against him in sentencing proceedings. *Estelle*, 451 U.S. at 463, 68 L. Ed. 2d at 369, 101 S. Ct. at 1873.

The Court began by holding that "the State's attempt to establish *** future dangerousness by relying on the unwarned statements *** infringes Fifth Amendment values." *Estelle*, 451 U.S. at 463, 68 L. Ed. 2d at 369, 101 S. Ct. at 1873. The court found that because the respondent's "future dangerousness was a critical issue at the sentencing hearing, and one on which the State had the burden of proof beyond a reasonable doubt" (*Estelle*, 451 U.S. at 466, 68 L. Ed. 2d at 371, 101 S. Ct. at 1874-75), "the Fifth Amendment privilege was implicated" (*Estelle*, 451 U.S. at 466, 68 L. Ed. 2d at 371, 101 S. Ct. at 1875).

For reasons I have already discussed, I would find that the trial court's use of the sexual offender evaluation to increase defendant's penalty required that the record contain proof of those results beyond a reasonable doubt. Regardless, the holding in *Estelle* is not limited to the situation where state law mandates proof of a sentencing factor beyond a reasonable doubt or even where a sentence is increased

beyond a statutory minimum based on a factor applied at sentencing. The Court made clear that the fifth amendment is implicated whenever compelled statements are used at the sentencing phase of trial because "[w]e can discern no basis to distinguish between the guilt and penalty phases *** so far as the protection of the Fifth Amendment privilege is concerned. Given the gravity of the decision to be made at the penalty phase, the State is not relieved of the obligation to observe fundamental constitutional guarantees." *Estelle*, 451 U.S. at 462-63, 68 L. Ed. 2d at 369, 101 S. Ct. at 1873.

The *Estelle* Court did not rely on the State's attempt to prove an element of the offense, as it pertains to sentencing, with the defendant's self-incriminating statements. Rather, the Court stated generally that "[a]ny effort by the State to compel respondent to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment." *Estelle*, 451 U.S. at 463, 68 L. Ed. 2d at 369, 101 S. Ct. at 1873. The Court's holding is clear that "[a] criminal defendant *** may not be compelled to respond to a psychiatrist if his statements can be used against him at a *** sentencing proceeding." *Estelle*, 451 U.S. at 468, 68 L. Ed. 2d at 372, 101 S. Ct. at 1876.

The fifth amendment, as applied by the United States Supreme Court in *Estelle*, prohibits the trial court's actions in this case. The trial court compelled defendant to respond to a psychiatrist and then used his statements against him at sentencing proceedings. Defendant received no warnings of his right to refuse to participate in the sex offender evaluation based on his privilege against self-incrimination before making the statements. Under *Estelle*, defendant cannot be said to have waived the privilege. The trial court, in using defendant's compelled statements against him at sentencing, violated defendant's fifth amendment rights.

Because I concur with the majority that the evidence is sufficient to prove defendant's guilt beyond a reasonable doubt, I concur in that portion of its judgment. Because I agree with defendant that the trial court violated his fifth amendment rights, I would vacate defendant's sentence and remand for a new sentencing hearing. I would further order the trial court that it may not compel defendant to participate in a sex offender evaluation because (a) it lacks any statutory authority to do so and, nonetheless, (b) any use of compelled statements defendant made in such an evaluation in sentencing him would violate the fifth amendment. Accordingly, I dissent from that portion of the majority's judgment affirming defendant's sentence.