2022 IL App (1st) 200096-U

No. 1-20-0096

Order filed August 4, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 1316 |
| | ) | |
| ANGEL BATISTA, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for predatory criminal sexual assault of a child is affirmed where the evidence supported the trial court's finding that the minor victim's testimony was credible and sufficient to find defendant guilty.

¶ 2    Following a bench trial, defendant Angel Batista was convicted of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2016)) and sentenced to 25 years' imprisonment. On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because the minor victim's testimony was insufficient to sustain his conviction.

Defendant argues that, during a forensic interview, the minor victim explicitly denied that an act of penetration occurred. He further argues that there were numerous contradictions between the victim's outcry statements and her trial testimony, which thereby diluted her credibility. Defendant claims that the victim's trial testimony was fantastical, unreasonable, and contrary to universal human experience. For the reasons that follow, we affirm.[1]

¶ 3    Defendant was charged with three counts of predatory criminal sexual assault of a child and four counts of aggravated criminal sexual abuse for acts he allegedly committed against his 10-year-old daughter, K.G.B., and K.S., the 6-year-old daughter of his then-girlfriend, Nicole N. The trial court found defendant not guilty of six of the counts based on its finding that the State failed to prove beyond a reasonable doubt that he committed the acts for the purpose of sexual gratification or arousal. The court found defendant guilty of one count of predatory criminal sexual assault of a child as to K.S., which alleged that defendant was 17 years old or older and knowingly committed an act of sexual contact upon K.S., specifically, an intrusion by inserting his finger into K.S.'s sex organ, and K.S. was younger than 13 years old. We discuss the evidence presented at trial relevant to that conviction.

¶ 4    Prior to trial, pursuant to a hearsay exception provided in section 115-10 of the Code of Criminal Procedure (725 ILCS 5/115-10 (West 2016)), the State moved to introduce into evidence statements made by the two minor children to K.S.'s mother, Nicole N., and Mark Parr, a forensic interviewer with The Children's Advocacy Center. Following a hearing, the trial court ruled that the children's statements to Nicole N. and Parr were admissible.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 5    At trial, Nicole N. testified that she met defendant in June 2016 through an online dating service. Defendant was 30 years old at that time. Two months later, Nicole and her daughter, K.S., moved into defendant's apartment where he lived with his daughter, K.G.B., in the 1400 block of North Monticello.

¶ 6    The offense in this case occurred sometime between May 31, 2017, and June 30, 2017. One night, when Nicole returned home from work, K.G.B. ran to her, shaking and crying. K.G.B. told Nicole that she had been lying on the bed with defendant that evening in his and Nicole's bedroom. They were getting ready to go to sleep. Defendant was in the middle of the bed, K.G.B. was on the left side, and K.S. was on the right side facing the wall. K.G.B. said her dad put his hands down her pants and touched her private area. K.G.B. told Nicole defendant was asleep when it happened. K.G.B. said she felt very uncomfortable, left the room, and went to her bedroom.

¶ 7    Nicole became very angry and confronted defendant, who was playing video games in another room. She yelled at him and asked him what he did and why. Defendant acted like he was confused and had no idea what happened. Defendant told Nicole he was "not sure" if it happened, he could not recall if it happened, but if that was what his daughter said, he was very sorry if it happened. Defendant told Nicole he felt disgusted and ashamed.

¶ 8    Nicole did not call the police that night because she was afraid about what might happen. Nicole was pregnant with her and defendant's daughter, T.B.[2] Nicole had no one to call and nowhere to go. Nor did she tell K.G.B.'s mother, Lauren G., who lived in another state.

¶ 9    The next day, K.S. was alone in her bedroom when Nicole approached and asked her if anything had happened to her the day before with defendant. K.S. shook her head indicating "yes."

---

[2] Nicole and defendant's infant daughter is referred to as both T.B. and T.N. in the record.

K.S. told Nicole she had been lying on the bed facing the wall with her eyes closed trying to fall asleep. She said defendant pulled her pants down, rubbed her private area with his fingers, licked his fingers, then rubbed her private area again. K.S. said defendant was asleep and snoring when it happened. K.S. did not say anything about defendant's eyes during this discussion, but months later during an interview K.S. said she saw defendant's eyes partially open.

¶ 10    Nicole immediately confronted defendant as she had the night before. Defendant began crying and said he felt horrible. He claimed he did not recall doing anything. Nicole did not call the police because she was still afraid.

¶ 11    In August 2017, Nicole and defendant moved to an apartment in Des Plaines, Illinois, with K.S. and K.G.B. Nicole was still pregnant and wanted to wait until after the baby was born to reach out for help because she was afraid she might lose the baby.

¶ 12    In December 2017, Nicole told a co-worker what happened. Nicole's manager called the police, who arrived at their Des Plaines apartment. Nicole told the police and an assistant state's attorney what happened. That same day, Nicole called Lauren G. and told her what happened. Nicole is no longer in a relationship with defendant.

¶ 13    On cross-examination, Nicole testified that on the night of the incident, she arrived home from work about 10 or 11 p.m. She talked to K.S. the next day sometime between 10 a.m. and noon. K.S. told Nicole that defendant's eyes were closed and he was snoring when he touched her.

¶ 14    Following preliminary questioning, the State asked the court to declare K.S. competent to testify. Defense counsel stated that he had no objection. Consequently, the trial court found there was "no issue" as to K.S.'s competence to testify at trial.

¶ 15    K.S. testified that she was six years old at the time of the incident and eight years old at trial. The incident happened inside their apartment in the summer while her mom was at work. K.S. and defendant were lying on the bed in the room where defendant and her mom slept. No one else was in the room. K.S. was facing the wall with her eyes closed, trying to fall asleep. Defendant was on the other side of the bed behind her. Defendant pulled down her pants, put his hand inside her underwear, and touched her private area. K.S. testified that defendant moved his hand around her private area, licked his fingers, then put his hand back in her private area. K.S. felt horrible, sick, and "grossed out." K.S. got up, then laid down on the bed again facing the wall. Defendant touched her again. K.S. opened her eyes, turned around, looked at defendant, and saw his eyes open. Defendant did not say anything. When K.S. closed her eyes, defendant's eyes closed. When asked how many times defendant touched her that night, K.S. testified "three or two."

¶ 16    When K.S.'s mom asked her if anything happened, K.S. began crying and shook her head indicating "yes." K.S. told her mom what defendant did to her. Her mom became upset and asked defendant why he did that. K.S. wanted to jump on defendant and scream in his face.

¶ 17    K.S. testified that she subsequently spoke with a man about what defendant did to her. She did not recall where or when she spoke with the man. A week before trial, K.S. and the prosecutor together watched a video recording of K.S.'s interview with the man. During the interview, the man showed K.S. a picture of a girl and asked K.S. where defendant touched her. K.S. pointed at the part on the picture and the man circled it. In court, K.S. identified the picture used during the interview and pointed to the circle, which was the girl's vaginal area.

¶ 18    K.S. further testified that defendant touched her with one finger, then two fingers. Most of the time he used one finger. The following colloquy then occurred:

"[PROSECUTOR:] And when he had his hand on your private part, what did he do with it?

[K.S.:] He was just, like, moving his finger around in it.

[PROSECUTOR:] And did he – When you say moving his finger around in it, was it on top of your private part or inside of your private part?

[K.S.:] Both. He did on top and then he would make his way in."

¶ 19    On cross-examination, K.S. agreed with defense counsel's statement that she discussed the incident "a lot over the last couple of years." She discussed it with her mom, her grandma, the man in the video, and the prosecutor. Her mom helped her remember by asking her questions about what happened. K.S. denied that anyone told her what to say or changed her story as she told it. No one asked her "did it happen like this?" The first time K.S. talked with her mom about the incident was when her mom came home after it had happened. Her mom came home at night. When her mom came home, she went to the bathroom, then K.S. told her what happened. K.S. told her mom in the hallway, and they then went into the girls' bedroom where K.G.B. was sleeping and talked more.

¶ 20    K.S. testified that when the incident happened, she was trying to go to sleep but was halfway awake because she had just gotten in the bed. Her eyes were closed and she was facing the wall. Only K.S. and defendant were in the bed. The following colloquy then occurred:

"[COUNSEL:] And you said Angel was asleep, right?

[K.S.:] Yes, until I saw his eyes open.

[COUNSEL:] Okay. Well, when he first started touching you, was he awake or asleep?

[K.S.:] He was awake. Because I bet if he was doing that, he cannot just being [*sic*] doing that in his sleep so he was awake.

[COUNSEL:] Okay. Did somebody tell you that?

[K.S.:] Um, no.

[COUNSEL:] All right. But you were looking at the wall, correct?

[K.S.:] Yes.

[COUNSEL:] So you didn't see his eyes, right?

[K.S.:] I turned around and – I turned around and then I opened my eyes and then I saw his eyes open when I opened my eyes.

[COUNSEL:] Okay. And was that while he was still touching you?

[K.S.:] Um, yes. But then he stopped when I turned over because I was like this then so he couldn't really do anything. So I looked at him because I was turning around to look at him.

[COUNSEL:] Okay. And when you turned around to look at him at that point, was Angel's eyes open or closed?

[K.S.:] When I opened my eyes, his eyes were open. But when I closed them, he closed his eyes."

¶ 21    K.S. again testified that after defendant touched her, she got up from the bed, but then she laid back down, and he touched her again.

¶ 22    On redirect examination, K.S. testified that she could not fall asleep on the night in question because what was happening was "very unnerving and it was horrible." K.S. turned to look at

defendant when he was touching her private part because she wanted to see if he was awake and she was going to tell him to stop.

¶ 23    K.G.B., who was 12 years old at trial, testified that on the night in question, she was talking with her dad, defendant, in his bedroom when he fell asleep on the bed. Defendant's eyes were closed and he snored once. K.G.B. laid down on the bed next to him on her back. K.S. entered the room and laid down on the bed on the other side of defendant. About two minutes later, defendant reached underneath K.G.B.'s shorts, placed his hand inside her underwear, and touched her private part with his finger for a minute or two. K.G.B. moved and defendant stopped touching her. Defendant turned the other way facing K.S. K.G.B. left the room and went to the living room. Defendant stayed in his bedroom with K.S. K.S. exited the bedroom 5 or 10 minutes later and began watching TV with K.G.B. in the living room. About 15 minutes later, Nicole returned home from work. K.G.B. immediately told Nicole that she needed to talk to her. K.G.B. and Nicole went inside the girls' bedroom and K.G.B. told her what happened. Nicole then confronted defendant.

¶ 24    Mark Parr, executive director of The Children's Advocacy Center, testified that on December 28, 2017, he conducted a forensic interview with K.S., which was video recorded. K.S. told Parr that defendant touched her on her private part. When Parr asked K.S. to explain which part she was referring to, K.S. pointed to her genital area. Parr showed K.S. an anatomically detailed drawing of a girl and asked her to indicate where she was touched. K.S. pointed to the vaginal area on the drawing, then circled that area. In court, Parr identified the drawing.

¶ 25    K.S. told Parr that the incident occurred in her mom's bed while her mom was at work. K.S. stated that defendant placed his hand under or inside her clothes and touched her private part with his finger. K.S. said defendant's finger did not go inside her private part. Parr asked if

defendant's finger moved in any way. K.S. replied that defendant's finger moved "like cleaning it." K.S. stated that she told her mom what happened.

¶ 26    Parr identified the video recording of his interview with K.S. and testified that it was a true and accurate depiction of that interview.

¶ 27    Parr also interviewed K.G.B. who told him that she was lying in bed with her dad when K.S. entered the room and laid down on the other side of him. K.G.B. told Parr that defendant reached inside her underwear and touched her private part with his finger. K.G.B.'s interview was also recorded. The recorded interviews were admitted into evidence and viewed by the trial court.

¶ 28    This court viewed the video recording of Parr's interview with K.S. Therein, K.S. stated that she was lying with defendant in her mom's bed and he "kind of touched in my private parts." K.S. stated that she was lying next to defendant, who was right behind her, and she was facing the wall. Defendant put his finger inside her pajamas and touched her private part. She stated that defendant was asleep at the time and snoring loud. K.S. was half asleep, but she opened her eyes to see what defendant was doing. K.S. stated that she got up, then laid down again, but then thought she should not lay there, and got up and went to her room. When asked where her private part was that defendant touched, K.S. pointed to her vaginal area on her body.

¶ 29    The video further shows that Parr showed K.S. an anatomical drawing of a girl and asked her to indicate on the drawing where defendant touched her. K.S. pointed to the girl's vaginal area, then circled it when asked to do so. K.S. stated that defendant touched her "like he was like cleaning it kind of" with his finger. Parr asked K.S. if anything went inside her private part, and she replied, "umm, no." Defendant moved his finger on her private part. K.S. stated that she told her mom about it after the day it happened. Parr asked K.S. if defendant touching her there

happened one time or more than one time. K.S. replied, "one time." Parr confirmed K.S. was referring to the one time it happened while her mom was at work.

¶ 30    On cross-examination, defense counsel asked Parr if K.S. stated that an incident "happened on more than one occasion or just this one occasion." K.S. told Parr that "it happened one time." Counsel then asked Parr if K.S. stated whether it happened just once that night or if it happened multiple times on the same night. Parr replied, "[h]er statement to me was it happened one time." K.S. told Parr that she got up after it happened, but he did not recall her stating that she laid back down and it happened again. K.S. stated that defendant was asleep and snoring when it happened.

¶ 31    The State presented the birth certificates of K.S. and K.G.B., which were admitted into evidence. The State then rested.

¶ 32    Defendant testified that he was 32 years old at the time of trial. Defendant met Nicole in July 2016 on a dating website. Nicole and K.S. moved in with defendant a month later. K.G.B. lived with defendant during the summer. On the day in question, Nicole brought K.S. and K.G.B. to work with her. Defendant picked up the girls from Nicole's job about 6:30 p.m. Defendant, K.G.B., and K.S. arrived home between 8 and 9 p.m. Nicole was still at work. Defendant told the girls to be quiet and watch TV. Defendant took a shower, went in his bedroom, and fell asleep.

¶ 33    Defendant testified that he did not recall talking with K.G.B. in his bedroom. The next thing he remembered was waking up about 11:30 p.m. and Nicole calling out to him to come to the girls' bedroom. Nicole was furious. Nicole said K.G.B. told her that defendant had touched her in an inappropriate way. Defendant was confused. He did not recall touching K.G.B. or K.S. in an inappropriate manner. Defendant thought about it and repeatedly asked Nicole if she was sure. He began to cry. The next day, Nicole told defendant that she asked K.S. if anything had happened

and if defendant had been awake or asleep. Nicole told defendant that they had to tell K.G.B.'s mom, Lauren, about what happened. Defendant said he would tell her, but he wanted to wait.

¶ 34    Defendant further testified that in August 2017, he, Nicole, and K.S. moved to a new apartment in Des Plaines. K.G.B. moved in with them in October. Nicole gave birth to her and defendant's daughter, T.B., on November 12, 2017. Two days later, Lauren and her daughter, Delilah, moved in with them for three weeks. Defendant was arrested in December 2017.

¶ 35    On cross-examination, defendant testified that he did not know if he touched K.G.B.'s vagina but acknowledged "that's what she alleged." When the prosecutor asked defendant if K.G.B. told the truth that he placed his fingers inside her vagina, defendant replied, "I don't know." He further stated, "[t]his is what she was telling me." Defendant acknowledged that he never told K.G.B. that she was lying. Nor did he ever tell Nicole that K.S. was lying when K.S. said defendant put his fingers inside her vagina. Defendant did not want to say they were lying because he did not know. After Nicole confronted him, defendant called some of his ex-girlfriends and asked them if anything similar had ever happened. He also did a Google search to try to identify his problem. When a detective asked defendant if the girls were making up stories, defendant said he did not know whether they were lying. Defendant testified that he would never intentionally place his fingers inside a child's vagina. After Nicole told him about K.G.B.'s allegation, defendant told K.G.B. "if it happened, I do apologize." Defendant waited to tell Lauren what happened because he wanted to wait until after the holidays and because he was paying child support. Defendant was "still confused" about whether he placed his fingers inside his daughter's vagina.

¶ 36    In rebuttal, the State presented a certified copy of defendant's 2009 conviction for aggravated unlawful use of a weapon.

¶ 37    The trial court stated that it listened attentively to the testimony from each witness, observed their demeanor, and considered how they testified, the circumstances of what they said happened, and the reasonableness of their testimony in light of all the evidence in the case. The court noted that defense counsel had argued in closing that there were inconsistencies in K.S.'s testimony. The court stated that it considered K.S.'s testimony in court, her prior statements to her mother, her immediate outcry, and her statement to Parr in the forensic interview and found that "she was not impeached in any way." The court found that the evidence was "clear" and that there was "no doubt" that defendant "knowingly" placed his finger "inside" K.S.'s vagina. The court also had no doubt that defendant had touched K.G.B.'s vagina. The court found, however, that the State had failed to prove beyond a reasonable doubt that defendant committed the acts for the purpose of sexual gratification or arousal. Consequently, the court found defendant guilty beyond a reasonable doubt for the one count of predatory criminal sexual assault of a child as to K.S., but not guilty of the remaining counts which each alleged that he committed the acts for the purpose of sexual gratification or arousal.

¶ 38    Defendant filed a motion for a new trial contending that the State failed to prove him guilty beyond a reasonable doubt. At the hearing on that motion, defense counsel argued that the State failed to prove there was an intrusion or penetration. Specifically, counsel noted that K.S. testified that defendant placed his hand in her private or vaginal area and moved it around like he was cleaning it. Counsel argued that K.S.'s testimony simply showed rubbing or touching, which was not sufficient to prove an intrusion or penetration.

¶ 39    In response, the State argued that K.S. testified that defendant placed his finger in her vagina and moved it around as if cleaning inside her hole that she urinates from, which constituted

an intrusion. The State also argued that the statute states that contact, however slight, between a person's hand and another person's sex organ constitutes an offense.

¶ 40    The court stated that it found K.S. "very credible" and that her testimony was "very clear as to what the defendant did." The court further stated that K.S. clearly "testified to an intrusion," and that her trial testimony was corroborated by the State's other evidence. The trial court denied defendant's posttrial motion and sentenced him to 25 years' imprisonment. Defendant immediately filed a motion to reconsider the sentence, which the trial court denied.

¶ 41    On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because K.S.'s testimony was insufficient to sustain his conviction. Defendant argues that, during the forensic interview, K.S. explicitly denied that an act of penetration occurred. He further argues that there were numerous contradictions between K.S.'s outcry statements and her trial testimony, which thereby diluted her credibility. Defendant claims that K.S.'s trial testimony was fantastical, unreasonable, and contrary to universal human experience.

¶ 42    When defendant claims the evidence is insufficient to sustain his conviction, this court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt. *People v. McLaurin*, 2020 IL 124563, ¶ 22 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard applies whether the evidence is direct or circumstantial and does not allow this court to substitute its judgment for that of the fact finder on issues involving witness credibility and the weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). This court will not retry the defendant. *People v. Newton*, 2018 IL 122958, ¶ 24. Upon our review, all reasonable

inferences from the evidence must be allowed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42.

¶ 43    In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences from therein. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). In weighing the evidence, the fact finder is not required to disregard the inferences that naturally flow from that evidence, nor must it search for any possible explanation consistent with innocence and raise it to the level of reasonable doubt. *Jackson*, 232 Ill. 2d at 281. We will not reverse a criminal conviction based upon insufficient evidence unless the evidence is so improbable or unsatisfactory that there is reasonable doubt as to defendant's guilt. *Lloyd*, 2013 IL 113510, ¶ 42.

¶ 44    To prove defendant guilty of predatory criminal sexual assault of a child as charged in this case, the State was required to show that defendant was 17 years old or older and knowingly committed an act of sexual contact upon K.S., specifically, an intrusion by inserting his finger into K.S.'s sex organ, and K.S. was younger than 13 years old. 720 ILCS 5/11-1.40(a)(1) (West 2016).

¶ 45    Here, viewed in the light most favorable to the State, the record shows that the evidence presented at trial was sufficient for the trial court to find defendant guilty beyond a reasonable doubt of predatory criminal sexual assault of K.S. K.S. testified that while she was lying on the bed with defendant, he pulled down her pants, put his hand inside her underwear, and touched her private area. K.S. explained that defendant moved his finger around in her private area, licked his fingers, then put his hand back in her private area. K.S. stated that she got up from the bed, and when she laid back down defendant touched her again. K.S. testified that defendant touched her private area "three or two" times that night. She further testified that when she turned around and

looked at defendant, she saw that his eyes were open. In addition, K.S. testified that when her mother asked her if anything had happened with defendant, K.S. told her mother about how defendant had touched her. K.S. recalled that she later told a man, Parr, about how defendant had touched her. In court, K.S. identified an anatomical drawing of a girl Parr had showed her and stated that the circled vaginal area on the drawing indicated the area where defendant touched her.

¶ 46    K.S.'s trial testimony was corroborated by testimony from her mother, Nicole, and Parr. Both Nicole and Parr testified about the statements K.S. made to them about defendant touching her private area. The record shows that the statements K.S. made to Nicole and Parr were substantially the same as K.S.'s testimony. K.S.'s testimony was further corroborated by the video recording of her interview with Parr in which she similarly discussed how defendant had touched her private area. The video shows K.S. circling the vaginal area of the girl in the drawing to indicate where defendant touched her.

¶ 47    We find no merit in defendant's claims that K.S.'s testimony was insufficient to sustain his conviction. Defendant first claims the State failed to prove an act of penetration occurred because during the forensic interview K.S. denied there was any intrusion into her vaginal area. Defendant specifically points to the portion of the interview where Parr asked K.S. if anything went inside her private part when defendant was "cleaning" it with his finger, and K.S. replied, "umm, no."

¶ 48    Article 11 of the Criminal Code of 2012, which addresses sex offenses, defines "sexual penetration," in pertinent part, as follows:

> "any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, *or any intrusion, however slight*, of any

part of the body of one person or of any animal or object into the sex organ or anus of another person[.]" (Emphasis added.) 720 ILCS 5/11-0.1 (West 2016).

The female sex organ includes the vagina as well as the labia majora and labia minora, the outer and inner folds of skin of the external genital organs. *People v. Gonzalez*, 2019 IL App (1st) 152760, ¶ 44. Whether an act of sexual penetration occurred is a question of fact that is determined by the trier of fact. *People v. Hillier*, 392 Ill. App. 3d 66, 69 (2009), *aff'd on other grounds*, 237 Ill. 2d 539 (2010).

¶ 49    In this case, as noted above, the State charged defendant with committing an act of intrusion by inserting his finger into K.S.'s sex organ. At trial, the prosecutor asked K.S. what defendant did with his hand when he placed it on her private part. K.S. replied that he was "moving his finger around in it." The prosecutor then specifically asked K.S. if defendant's finger was on top of or inside of her private part. K.S. replied, "[b]oth. He did on top and then he would make his way in." The record shows that the prosecutor's questioning at trial was more specific, direct, and clearer than Parr's more open-ended and ambiguous question during the forensic interview of whether anything went inside K.S.'s private part while defendant was cleaning it with his finger. The different approaches in questioning are obvious and necessary as the State had a duty at trial to present evidence of an intrusion while Parr's duty during the interview was to aid K.S. with sharing her account of what happened in her own words. Thus, K.S. provided a more specific answer at trial as to exactly what defendant did with his finger.

¶ 50    In finding defendant guilty, the trial court stated that the evidence clearly showed that defendant placed his finger "inside" K.S.'s vagina. In denying defendant's posttrial motion, the court rejected the same argument defendant presents here. The court then stated that K.S. clearly

"testified to an intrusion" and that her trial testimony was corroborated by the State's other evidence. Whether an intrusion occurred was a factual determination for the trial court to make. *Hillier*, 392 Ill. App. 3d at 69. The record here shows that the evidence supported the court's finding that an intrusion, "however slight," occurred, and we will not disturb that finding.

¶ 51    Defendant next claims that K.S.'s trial testimony was not credible because it was contradicted by her prior statements to Nicole and Parr. Defendant argues that K.S. told Nicole that defendant touched her twice, she told Parr defendant touched her once, and then she testified defendant touched her "three or two" times. Defendant also points out that Nicole testified that she spoke with K.S. the day after the offense but K.S. testified that she told Nicole what happened the same night of the offense. Defendant claims the trial court erred when it found no inconsistencies in K.S.'s testimony. Defendant also asserts that K.S. told Nicole and Parr that defendant was asleep and snoring when he touched her, which was corroborated by defendant's own testimony, and thus, the trial court rejected the credibility of K.S.'s outcry statements when it found he knowingly committed the offense.

¶ 52    The testimony of a single witness is sufficient to sustain a conviction where it is positive and credible, even when it is contradicted by defendant. *People v. Gray*, 2017 IL 120958, ¶ 36. Where a guilty finding depends on eyewitness testimony, the reviewing court must determine if a factfinder could reasonably accept the testimony as true beyond a reasonable doubt. *Id.* "Under this standard, the eyewitness testimony may be found insufficient 'only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt.' " *Id.* (quoting *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)). A conviction will not be reversed simply because the evidence is contradictory, or defendant claims a witness was not credible. *Id.*

Minor inconsistencies in a witness's testimony or in the testimony between witnesses may affect the weight of the evidence but do not, by themselves, create a reasonable doubt of the defendant's guilt. *People v. Corral*, 2019 IL App (1st) 171501, ¶ 85 (citing *People v. Adams*, 109 Ill. 2d 102, 115 (1985)).

¶ 53    Here, the record shows that the inconsistencies alleged by defendant were minor and did not rise to a level of significance that diminished K.S.'s credibility or created a reasonable doubt of defendant's guilt. The charge of which defendant was convicted alleged that he committed a single act of intrusion against K.S. The State needed to show that defendant did so only once. Consequently, whether K.S. stated that defendant touched her once, twice, or three times at the time of the incident is of no significance. Moreover, the video shows that Parr asked K.S. if defendant touching her there happened one time or more than one time, and K.S. replied, "one time." Parr then confirmed with K.S. that she was referring to the one time it happened while her mom was at work. The record thus shows that when speaking with Parr, K.S. was referring only to the one incident. However, when speaking with Nicole, K.S. explained that defendant touched her, licked his fingers, then touched her again, describing two touches during the one incident.

¶ 54    Similarly, whether K.S. told Nicole about the incident when Nicole returned home from work that night at 11 p.m. or the following morning is of no significance. In addition, although K.S. told Nicole and Parr that defendant was sleeping and snoring when he touched her, at trial she explained that she turned around and saw defendant's eyes open, so she knew he was awake. The record further shows that by the time of trial when K.S. was eight years old, she realized that defendant could not have pulled down her pajama bottoms and touched her in his sleep.

¶ 55    When finding defendant guilty, the trial court noted that defense counsel had argued in closing that there were inconsistencies in K.S.'s testimony. The court expressly stated that it considered K.S.'s testimony in court, her prior statements to her mother, her immediate outcry, and her statement to Parr during the forensic interview and found that "she was not impeached in any way." In denying defendant's posttrial motion, the court stated that it found K.S.'s testimony "very credible" and that her testimony was "very clear as to what the defendant did." It was within the trial court's province to determine the credibility of K.S.'s testimony, and based on this record, we find no reason to disturb its determination. *Siguenza-Brito*, 235 Ill. 2d at 228.

¶ 56    Finally, defendant's argument that K.S.'s testimony was fantastical, unreasonable, and contrary to universal human experience is unpersuasive. Our review of the record, including the videotaped interview, reveals no indication that K.S.'s account of what occurred was unbelievable or based on her eagerness to satisfy the adults around her. Nor does it show that she changed her story or that her testimony was prepared by adults. The testimony from Nicole and Parr and the videotaped interview show that K.S.'s account remained substantially the same from the time the assault occurred through trial. Although K.S. stated that what happened to her was "very unnerving," she may have heard that word used by an adult and repeated it at trial. However, the record also shows that K.S. testified that when the incident occurred, she wanted to jump on defendant and scream in his face. K.S. further testified that when defendant touched her, she felt horrible, sick, and "grossed out," which is language typical for an eight-year-old. As stated above, the trial court was responsible for determining the credibility of K.S.'s testimony. *Siguenza-Brito*, 235 Ill. 2d at 228. Our review of the record does not compel us to conclude that no reasonable

person could have accepted K.S.'s account of what happened beyond a reasonable doubt. *Gray*, 2017 IL 120958, ¶ 36. Accordingly, we find no basis to disturb the trial court's guilty finding.

¶ 57    For these reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 58    Affirmed.